THE RECTOR, ETC., OF THE CHURCH OF THE REDEEMER, Appellant, v. JAMES T. CRAWFORD, Respondent.

Persons, either members of, or friendly to a Sunday-school connected with the plaintiff, a religious corporation entitled to avail itself of the provisions of chapter 122, of the Laws of 1850, as amended by chapter 235, of the Laws of 1860, authorizing religious corporations to increase the facilities of public worship, signed a subscription for money to be appropriated to the erection of a building for Sunday-school purposes of the said church, which subscription paper was entitled as " subscriptions and donations to the Sunday-school building fund" of said church. Donors were notified that receipts would be given them by the finance committee of the plaintiff. The subscriptions were by the signers paid over to the defendant, who was, at the time, treasurer of the plaintiff, and subsequently, he having ceased to be treasurer, and refused to pay over or account for the amount of such subscriptions paid in,—*Held* (ALLEN and FOLGER, JJ. *contra*), that these circumstances gave to the plaintiff sufficient title to recover the same of the defendant.

And this although the original contributors had, some of them, directed the defendant not to pay over their subscriptions, and the Sunday-school had a voluntary organization independent of the church.

(Argued for appellant and submitted for respondent, December 22d, 1870, and decided January 26th, 1871.)

APPEAL from a judgment of the New York Superior Court, affirming a judgment upon a verdict directed in favor of the defendant, at a trial term.

The action was to recover the sum of about $600, the amount of the subscriptions of various persons, paid over to the defendant when treasurer ,of the plaintiff, under the following circumstances :

The plaintiff was a religious corporation in the city of New York. In 1859, a meeting of the Sunday-school teachers was

called, and a scheme was then proposed by which money was to be raised by the teachers and the friends of the school, for the purpose of erecting a building for Sunday-school purposes of the Church of the Redeemer. A subscription paper was drawn up, headed "Subscriptions and donations to the Sunday-school Building Fund of the Church of the Redeemer." This was signed by various subscribers, to the amount of $514.02. The money was paid over to the defendant, who was at that time the treasurer of the church. The vestry of the church had nothing to do with the issuing or circulation of the subscription paper. The Sunday-school had a separate treasurer and organization, but no corporate existence.

The defendant ceased to be treasurer in May, 1860. His accounts were settled by the finance committee, but no part of this fund appeared in that account. Before the subscription paper was circulated, a prospectus was handed about setting forth the scheme under which the money was to be raised, and reciting that "The teachers of the Sunday-school attached to the Church of the Redeemer, N. Y., having taken in hand the erection of a parish school-house, including a small free chapel for missionary services, are desirous of submitting to their fellow-parishioners and friends the following plan," etc. The circular had attached to it a notice that the donors would receive receipts from the finance committee of the church. And this notice was signed by the finance committee and treasurer. Many of the subscriptions were outside the parish. The defendant testified that many of the contributors had forbidden his paying over this fund to the church, and that he declined to pay on the ground it did not belong to the church. The rector of the plaintiff, at the time (who had before the trial left the parish), also testified that "neither the vestry of the church, nor the corporation as such were connected with the enterprise."

*Samuel Hand*, for the appellant.

*James K. Hill*, for the respondent.

RAPALLO, J.  The right of the church to claim the fund
in question from its treasurer did not depend wholly
upon the question whether the fund was raised by authority
of the church as a corporation or whether the persons who
were instrumental in raising it and those who collected it
intended that it should become the property of the church.
Though the subscription may have been set on foot without
authority from the church as a corporation, yet if the
money was raised apparently as a church fund, and the
donors, at the time of giving, supposed that they were giv-
ing to the church and intended so to do, the church could
adopt the acts of those who raised the fund and claim the
benefit of the donations, provided it had corporate capacity
to receive the donations for the purpose for which they
were given.   The church as a corporation was expressly
empowered to accomplish the precise purposes for which this
fund was raised, by section 2 of chapter 122 of the Laws of
1850, as amended by section 2 of chapter 235 of the Laws of
1860.

There was evidence in the case tending to show, if not con-
clusively proving, that it was held out to the subscribers that
the sums subscribed were to belong to the church, to be
applied by it to these specific purposes.

The circular soliciting subscriptions states that the teach-
ers of the Sunday-school attached to the church have taken
in hand the erection of a parish school-house and free chapel,
and the persons signing the circular solicit subscriptions to a
fund for that purpose.  These signers include the treasurer
and members of the finance committee, and the rector of the
church.   The circular does not in terms state to whom the
fund is to belong or in whom the title to the school-house is
to be vested; but attached to it is a notice that receipts
signed by the finance committee will be sent to the donors for
each payment made, and this notice is signed by the treasurer
and finance committee of the church in their official names.

The subscription list presented to the subscribers for signa-
ture, and to which their names are subscribed, is headed

" Subscriptions and donations to the Sunday-school *Building Fund of the Church of the Redeemer.*"

This certainly indicates that the fund was subscribed as a fund of the church, and not of any separate organization.

The teachers, or their friends, who are now claimed to be the parties to whom the gifts were made, were not organized into any society or corporation capable of carrying out the proposed enterprise; nor was there any evidence of any such organization having been contemplated; and by reference to the Laws of 1850, chapter 122, section 2, and Laws of 1860, chapter 235, section 2, it will be seen that the consent of the vestry, or trustees of the church, was required for such a separate organization. The church was duly organized, and especially empowered to carry out the plan; and in the face of the statement that the fund was to be a building fund of the church, and that receipts for all payments to the fund were to be given by the finance committee of the church, it is difficult to see how the subscribers could have had any understanding, other than that they were subscribing to a church fund, to be raised for a purpose specially authorized by the law of its incorporation.

The payments were made to the proper financial officer of the church, and if made by parties intending that they should go to the church, no private intentions of the treasurer, or the individuals so operating with him, could defeat the gift, if claimed by the church.

And if the gifts, at the time they were made, were intended to be made to the church, no subsequent directions of the donors themselves, could relieve the treasurer of his duty to pay over the fund, unless such directions were shown to have been given before any acceptance by the church. An understanding that this fund was to be kept separate from the general funds of the church, is in no manner inconsistent with its being a church fund.

The point that this fund did not belong to the church, seems to have first occurred to the defendant after he left the church.

On the 10th of April, 1860, when applied to by a member of the finance committee of the church, to be informed in what bank the fund was deposited, the defendant wrote in reply, that the money was loaned on bond and mortgage on property in Westchester county, subject to be called in at any time, and that, if the committee desired the money returned, he was prepared to return it immediately.

He clearly understood at that time, that he held the fund subject to the order of the finance committee, and it further appears in the evidence, that the mortgage spoken of was taken by him in his official capacity of treasurer. But afterward he took the ground, that the church had no title to the money, and that he was accountable only to the contributors. He does not even admit an accountability to the finance committee, who, according to the terms of his circular, were to give receipts for it to the donors.

The defendant also claims, that he is discharged from liability to the church by reason of a settlement of his accounts as treasurer by the finance committee, and the payment over to his successor of the sum of $19.50, as the balance of his accounts. It is not pretended that the fund in question was accounted for in that settlement, but, on the contrary, the defendant testified that nothing was said about it at the time.

This settlement, he says, took place at the time he ceased to be treasurer. It appeared in the evidence that he so ceased in May, 1860. But a short time previously, viz., April 10, 1860, he had accounted specifically for this fund by informing the finance committee that it was invested on bond and mortgage, and would be paid over when required. The mortgage stood in his name as treasurer. A transfer of that mortgage was the proper mode of settling this matter, and there was no occasion to refer to it in the settlement of his cash account when the $19.50 was paid. That accounting, and the omission to refer to the fund in question, could not be deemed a discharge from liability for that fund, in view of the condition in which the very recent correspondence had left that subject.

We think that the judge erred in instructing the jury, as matter of law, that the fund did not belong to the church, and in directing a verdict for the defendant.

The church has adopted the acts of its treasurer and rector in collecting the fund. The vestry claimed and obtained the portion of the fund from the rector, when he separated from the church, and by this action, as well as the previous demand, they have claimed the portion received by the treasurer.

The church will of course take the fund for the specific purpose for which it is donated, and have no right to apply it to any other. Should that purpose be abandoned, the donors will have the right, if they so elect, to demand its restitution to them by the church.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

CHURCH, Ch. J., GROVER and PECKHAM, JJ., concur; ALLEN and FOLGER, JJ., dissent; ANDREWS, J., absent.