JOHN L. AVERY ET AL., APPELLANTS., V. L. B. BAKER ET AL., APPELLEES.

[FILED OCTOBER 1, 1889.]

1. **Religious Societies:** SALE OF PROPERTY: INJUNCTION: JOINDER OF PARTIES. Where a number of persons contribute to the erection of a church edifice upon the agreement that it is to be used by a certain religious society, and when not in use by it, by other denominations, and for "lectures, concerts," etc., *held*, that it was not necessary for all the persons contributing to the erection of the building to join in an action to restrain a sale and transfer of the property to be used for mercantile purposes.

2. ———: USE OF CHURCH PROPERTY: INJUNCTION. Where a church edifice has been erected by voluntary contributions and upon the promise and agreement that the building is to be used for certain specified purposes, the contributors to the fund have a right to insist that the property be used for the purposes named, and may enjoin a sale of the building where no adequate cause is shown and the effect would be to divert the funds from the use intended and apply them elsewhere.

APPEAL from the district court for Madison county from a judgment sustaining a demurrer to the plaintiff's petition. Heard below before NORRIS, J.

The petition is as follows :

"That on or about the —— day of April, A. D. 1881, the above named J. R. Morris, a regular authorized and licensed minister of the Baptist faith, together with the other plaintiffs above named and numerous other parties, all residents of the village of Battle Creek, being desirous of having a place of religious worship erected in the village of Battle Creek, entered into an agreement whereby a church building was to be erected for the benefit of the residents of Battle Creek and vicinity, there being at that time no church building in which those of protestant faith could worship.

" That according to the terms of said agreement, said J. R. Morris was to receive subscriptions from the plaintiffs and other residents of said village of Battle creek, to purchase a lot and proceed to and superintend the erection of a church building in the said village of Battle Creek, and it was further understood and agreed that said church building so to be erected was to be for the use and religious benefit of the residents of said village and should always continue so to be used for church purposes, and it was further understood and agreed that those persons professing the Baptist faith should have the preference right to conduct religious services therein, but that members of any other evangelical protestant church might have and exercise the privilege of holding religious services therein, providing that the same were held at such times as to cause no interference with the right of those professing the Baptist faith ; and it was further understood that the residents of Battle Creek were to have the privilege of using said building for the purpose of having lectures and concerts of a religious nature held therein, providing as aforesaid that the same should not interfere with the stated times of holding the usual devotional services.   That subsequent to the date last aforesaid, and after the plaintiff and many others of Battle

Creek had subscribed towards the erection of the church building upon the conditions above named, the said plaintiff J. R. Morris procured a deed for lot eight in block fifteen in the original town of Battle Creek, from Blair & Kimball, which said lot was donated upon the conditions that the same should always be used for church purposes; that there was no object or purpose in having the legal title to said property taken in the name of the trustees of the Baptist church of Battle Creek; that these plaintiffs, other than said Morris, at the time of the deeding of said lot, were not present, and after being informed thereof made no objection, but acquiesced in the action of the plaintiff Morris, on his suggestion that it would be a more convenient method to have the title of the property taken in the name of some religious society, and the preference right of worship was given those professing the Baptist faith out of deference to and on account of the esteem and gratitude felt toward the plaintiff J. R. Morris, a minister of the Baptist church, but at no time did your petitioners entertain any thought, nor was it understood or agreed, that the ownership and right to said property was to rest in the Baptist church of Battle Creek as a religious society. That on or about the 12th day of June, 1888, subsequent to the time subscriptions were solicited from the plaintiffs for the erection of said church building, a religious society called the Baptist church of Battle Creek was organized, at which meeting J. R. Morris, W. B. Jordan, and Charles Pratt were elected trustees.

"That soon after the subscriptions subscribed toward the building of said church by the plaintiffs were paid in, the plaintiff J. R. Morris caused to be erected a church building upon the lot aforesaid at a cost of $522, of which amount the plaintiff

J. R. Morris subscribed and paid.....................$50 00
George S. Hurford      "           "      ..................... 32 00
R. H. Maxwell          "           "      ..................... 20 00

Avery v. Baker.

| John D. Hoover subscribed and paid | | | $20 | 00 |
|---|---|---|---|---|
| R. P. Avery | " | " | 20 | 00 |
| J. L. Avery | " | " | 5 | 00 |
| J. T. Hale | " | " | 25 | 00 |
| John D. Hoover, Sr. | " | " | 25 | 00 |
| Thomas Ross | " | " | 20 | 00 |
| D. M. Logan | " | " | 20 | 00 |
| Jacob Cleveland | " | " | 20 | 00 |
| William Pales | " | " | 5 | 00 |
| F. J. Hale | " | " | 25 | 00 |
| William Wigg | " | " | 5 | 00 |
| Lida Wigg | " | " | 5 | 00 |

and afterwards, and when said church was dedicated, the plaintiff J. R. Morris advanced the further sum of $270 to help pay off the indebtedness of said church and the other liabilities, plaintiffs above named and many others with like interests contributed sums ranging from one dollar to twenty-five dollars for the same purpose; that said society of the Baptist church of Battle Creek was an unincorporated body with no power or authority to act as a religious corporation under the laws of the state of Nebraska, and all business of any kind or nature transacted by the said society was done through the said J. R. Morris and his son-in-law, one W. B. Jordan; that of the amount paid toward the erection of the said church building, aside from the amount contributed by J. R. Morris, there was not over forty dollars by those professing the Baptist faith, but all of said amount was paid in by these plaintiffs and other residents of the village of Battle Creek, who were not members of said Baptist church, and many who were not members of said Baptist church, and many who were in no wise connected with any orthodox protestant church.

"That after the erection of said church building the plaintiffs furnished and advanced money at different times and divers times for the purpose of furnishing said building and rendering the same suitable for the purpose of

holding services therein, and have advanced money for repairs and to pay the necessary current expenses of maintaining said services, and from and after the time of building said church religious services were had therein for the benefit of the residents of the said village of Battle Creek under the direction of the plaintiff J. R. Morris, the pastor in charge, in conformity with the doctrine, faith, and tenets of the Baptist sect, for the period of about two years, and during said time religious services were held therein every Sunday, and on various occasions when said church was not in use by said plaintiff J. R. Morris for the benefit of those professing the Baptist faith, preaching of the gospel was had therein under the auspices of orthodox ministers of different protestant denominations, and said building has at all times been opened and used for the purpose of giving public concerts and lectures of a religious nature for the entertainment of the residents of the said village of Battle Creek; that about two years after the said building was erected the said plaintiff Morris moved from said village, and since his removal has resided elsewhere; but before leaving, the key to said building was left by said Morris with one Warner Hale, a resident of said village, but not a member of any orthodox society, with instructions to allow any protestant clergyman in good standing, without reference to denominational affiliations, to hold services therein for the benefit of the residents of said village, and thereafter, up to the — day of March, 1888, religious services were held in said church for the benefit of the people of said village whenever the services of an authorized minister, without reference to denomination or religious creed, could be obtained, and at various times lectures and concerts of a religious nature have been held therein.

"That the plaintiffs and many other residents of the said village, on whose behalf this action is brought, would never have subscribed and paid the amounts so contributed by them toward the erection of the said church, nor would

they have contributed or assisted in maintaining the same as a place of worship upon any other condition than those embodied in the agreement and understanding hereinbefore set forth.

"That afterwards, and on or about the — day of July, 1887, the said Blair & Kimball made and executed a quit-claim deed for the premises hereinbefore described to the trustees of the Baptist church of Battle Creek, Nebraska, and at the solicitation of W.. W. Wigg, George Pratt, and J. D. Hoover, Sr., who pretended to be the duly elected and qualified trustees of the Baptist church of Battle Creek, said deed was delivered to them, they pretending to be the proper custodians of the muniments of title to said church property.

"That on or about the 14th day of September, 1887, the said W. W. Wigg, George Pratt, and J. D. Hoover, Sr., made, executed, and delivered to the defendant L. B. Baker a deed to the said church property without the consent of these plaintiffs, claiming to act in and about the making of said deed as trustees of the said Baptist church society; but your petitioners allege that after the departure of said Morris from the said village of Battle Creek the Baptist church society of Battle Creek has never been an organization such as is recognized by the laws of this state, or by the rules and regulations governing religious societies of the Baptist church, and the said Wigg, Pratt, and Hoover were never chosen trustees of the society in any manner provided by law or by the usages, rules, and customs of the Baptist church, nor were they authorized to make a conveyance of said church property, nor were said parties or said Baptist church of Battle Creek authorized by the district court of Madison county to make a conveyance to said property to the defendant Baker; that the quit-claim deed above referred to was obtained by said Wigg, Pratt and Hoover at the instance and request of the defendant Baker for the purpose of avoiding the conditions recited in

the deed running to the trustees of the Baptist church in 1881, to the effect that said lot should always be used for church purposes, that the same might be conveyed by them to said Baker; that said parties have never accounted for the proceeds of said church building and lot, which is of about the value of one thousand dollars, but these plaintiffs aver and charge that the consideration of said property was lumber to the amount of about three hundred dollars, which said Wigg, Pratt, and Hoover propose to use in the erection of a building about eight miles south of Battle Creek, in Fair View precinct. That said defendant Baker has pretended to sell and convey by deed said church property to Barnard Langhoff and Michael Warneke, also defendants in this case, who were about to destroy, deface, and tear out the interior of said church building, and so arrange the inside thereof as to render the same suitable to occupy as a hardware store, thereby leaving said building utterly unfit for church purposes, and refuse to allow the plaintiffs or any of the residents of Battle Creek to worship therein; that said defendant purchased said premises with full knowledge of the rights of plaintiffs therein, and the said plaintiffs further say that the deed running from Wigg, Pratt, and Hoover, purporting to convey said premises to said defendant Baker, and the deed from the latter to said Langhoff and Warneke, cast a cloud upon the title of said premises.

"That those persons who formerly constituted the Baptist church society of Battle Creek are now no longer connected therewith, but most of them have become identified with other denominations or joined other or different Baptist societies; that said church building is the only one within twelve miles of Battle Creek where people adhering to the protestant religion may meet and worship."

The prayer is for an injunction to restrain the defendants from obstructing and destroying the building in question for church purposes, and to remove a cloud from the title to said property.

*H. C. Brome*, for appellants:

There is no defect of parties plaintiff, as the case comes under sec. 43 of the Code. It differs from a simple subscription to erect a church edifice, as there was in this case a purchase of property for a specific purpose by contributors of the purchase price. A conveyance, at the time of payment, to another than the one paying the consideration raises a resulting trust in favor of the grantor. (*Botsford v. Burr*, 2 Johns. Ch., 405; *Wray v. Steele*, 2 Vesey & Beames, 388; *Latham v. Henderson*, 47 Ill., 185; *Irvine v. Marshall*, 7 Minn., 286.) If a trust relation existed between plaintiffs and the church trustees, the former are entitled to an injunction to restrain the improper exercise of power by the trustees. A purchaser from a trustee, with notice, has the same liabilities as the trustee. (2 Perry on Trusts, sec. 816.)

*Wigton & Whitham*, for appellees:

The statement of who are plaintiffs can only include the subscribers to the building fund (*Quinlan v. Myers*, 29 O. S., 500, 508); but the members and trustees of the church are interested, and therefore necessary parties. (1 Pom. Eq. Jur., sec. 114; *Kellogg v. Lavender*, 9 Neb., 418, 429; *Cassidy v. Shinimin*, 122 Mass., 409; 1 Daniell's Chan. Pl. & Pr. (4 Ed.) 190 and N. 247; *Burke v. Perry*, 26 Neb., 414.) The court, of its own motion, will require necessary parties, who are omitted, to be joined, or will dismiss the action. (*Schwoerer v. Market Ass'n*, 99 Mass., 295.) There is no resulting trust under the facts. It was necessary to show that the amount paid by each was an aliquot part of the consideration. (*McGowen v. McGowen*, 14 Gray, 121, and cases cited.) The case is analogous to *Tigard v. Moffitt*, 13 Neb., 565, where an injunction was refused.

MAXWELL, J.

The demurrer is upon two grounds: first, that there is a defect of parties plaintiff; and second, that the petition does not state a cause of action.    The action is brought, primarily to restrain the defendants, in behalf of certain contributors to the erection of the church edifice, in which case, while it is proper to bring all who have contributed to that purpose before the court to prevent a multiplicity of suits, yet in a case like that set forth in the petition, a person who, in pursuance of an agreement set forth in the subscription list, has furnished funds to aid in the construction of a building for a public purpose, and which funds have been applied to that purpose, has a right to insist that such building shall not without good cause be converted to other uses; and he may maintain an action either in his own name or on behalf of all the subscribers, to prevent a violation of the contract.    In such case all the parties in interest are not required to join as plaintiffs.    Where one of the primary objects of the suit is to quiet title, it is necessary that all parties in interest be made parties either as plaintiffs or defendants, unless they are so numerous that it is impracticable to bring them all before the court.    This is not the case here, and it is probable that the plaintiffs cannot maintain an action to quiet title.    There is a defect of parties defendant, however, as the trustees should have been joined; but that objection is not raised by the demurrer.    If the allegations of the petition are true, the plaintiffs were residents of the village of Battle Creek, and there being no church of the protestant faith in that village or vicinity, they contributed to the erection of the building in question.    It was "further understood and agreed that said church building so to be erected was to be for the use and religious benefit of the residents of said village, and should always continue to be so, to be used for church purposes."

" It was further understood that the residents of Battle Creek were to have the privilege of using said building for the purpose of having lectures and concerts of a religious nature held therein," etc.   That a church edifice was erected and used for the purpose for which it was built for two years, when it was attempted to be sold to the defendants, and no building to be erected in its place or within eight miles of Battle Creek.   These facts, on their face, would seem to entitle the plaintiffs to relief.   If the allegations of the petition are true, the money contributed by the plaintiffs was paid in pursuance of a specific agreement that it was to be applied in the erection of the building in question.   Such a building in a small village like Battle Creek no doubt enhanced the value of every piece of property in the village, and thus, aside from its use for the Baptist society, lectures, concerts, etc., was a direct benefit to the property owners.   A church organization, like any other, must act in good faith with those contributing to the erection of an edifice for its use.   A church edifice is the result, ordinarily, of many voluntary subscriptions.   It would be the property of those who contributed to its erection, but for the fact that it was made as a donation to a particular society.   The donation, however, is for a particular purpose—the erection of a church edifice.   The money so contributed cannot be diverted and applied to another use without the donors' consent—as the erection of a building for a college, however much the latter might be needed.   If good faith requires the application of the money to the uses for which it was designed, the same rule would seem to apply after the building was erected.   If without adequate cause a religious society may sell a church building erected by voluntary contributors for that purpose, to carry on the mercantile or other business therein, and the persons who furnished the funds to erect the building be without remedy, the power would be liable to great abuse.   But no society possesses such power.   Justice and right

between individuals lie at the foundation of the Christian religion, and this rule is as binding upon the various religious organizations as upon individuals. No sufficient cause being shown for the attempted sale of the building in question, the plaintiffs had a right, so far as appears, to enjoin the sale and transfer to the defendant.

The judgment of the district court is reversed, and the cause remanded, with leave to answer, and for further proceedings.

REVERSED AND REMANDED.

THE other Judges concur.