(70 Misc. Rep. 645.)

FIRST CHURCH OF CHRIST SCIENTIST, IN BUFFALO, v. SCHRECK.

(Supreme Court, Equity Term, Erie County. February, 1911.)

1. RELIGIOUS SOCIETIES (§ 15½*)—FUNDS—OWNERSHIP.

A religious society was organized in 1888 with by-laws under which it was to have a Sunday school with a secretary and treasurer, who should annually present a report of its financial affairs, and under which its funds were to be under the care of the church committee. The defendant was elected secretary and treasurer in 1895, continuing in that office until her withdrawal from the society in 1910, during all of which time a building fund was being raised for the erection of a new building, and during which the defendant made the contributions of the Sunday school a fund to be used in placing an organ in the building to be erected, and contributions were made to what was known as the "organ fund," and in some of the reports made by defendant the fund was referred to as the "organ fund." After a change in the personal direction of the society's affairs, defendant contended that the purpose was impossible of performance, and that she held the fund as agent of the contributors, but it did not appear that it had been contributed on such exact and precise terms as the defendant claimed. Held, that the religious society was the legal owner of the fund and entitled to an accounting against defendant as its officer or agent.

[Ed. Note.—For other cases, see Religious Societies, Dec. Dig. § 15½.*]

2. SUBSCRIPTIONS (§ 19*)—PURPOSE OF DONATION—DIVERSION.

Where a religious society raises a fund by subscription for a particular purpose, it cannot divert the fund to another purpose, and, if it abandons such purpose, the donors may reclaim their contributions.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 22, 24; Dec. Dig. § 19.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the First Church of Christ Scientist, in Buffalo, N. Y., against Clara P. Schreck. Judgment for plaintiff.

Wallace Thayer and Edward E. Tanner, for plaintiff.

Wilbur E. Houpt, George H. Frost, and Simon Fleischman, for defendant.

BROWN, J. The plaintiff is a corporation duly organized in 1888 under the religious corporation law of this state. Section 3 of article 6 of the plaintiff's by-laws provides:

"A Sunday school shall be maintained by this Church, conducted in accordance with the instructions of Rev. Mary Baker Eddy in Christian Science Journal of October 1895. Its management shall be delegated to first Reader of the Church. It shall have a secretary and treasurer to be elected at the annual meeting and this officer shall at that time present a report of its affairs and progress, financially and otherwise. Its funds shall be under the care of the Church Committee."

In 1895 the defendant was duly elected to the office of secretary and treasurer of the plaintiff's Sunday school at the annual church meeting of the plaintiff corporation, and has continued in such office since that date up to the annual church meeting in January, 1910, having been elected each year at the regular annual meeting. For many years it has been the hopes and intention of the members of plaintiff's church to erect in Buffalo a suitable building for church worship purposes, and to this end a site was secured at the corner of Elmwood avenue and North street as the location for such new church. This site was paid for, and has ever since remained the property of the plaintiff. No church building has been erected thereon for the reason that many of plaintiff's congregation and members considered it an unfavorable location for such purpose, owing to its exposure to the noise of street traffic. About the time that such reasons were being urged for not building on this North street site, there was acquired a more favorable site known as the Lilacs, upon Chapin Parkway, for a church building. Plans were adopted and the idea of erecting a large edifice, costing between $300,000 and $500,000, generally prevailed among the members and congregation of the plaintiff. Steps were taken to raise a building fund, and the active and controlling members of the church and corporation were very enthusiastic in the work of securing a new church building upon the Lilacs site. In 1895 the defendant and other members of plaintiff's Sunday school conceived the plan of raising moneys in the Sunday school and devoting all contributions of Sunday school scholars and teachers to the creation of a fund to be used for the purpose of placing an organ in the new church building when erected; and the moneys then on hand and in defendant's hands as secretary and treasurer of the Sunday school were treated as the organ fund. From 1895 down to January, 1910, the contributions consisting of the usual Sunday collections contributed by the Sunday school scholars and teachers were contributed by such persons for the purpose of being added to the organ fund on hand, to be used by the plaintiff in obtaining a suitable organ to be placed in the new church when built. The only fund that the Sunday school ever had was this organ

fund. At the end of the first year of her incumbency of the office of secretary and treasurer of the Sunday school, the defendant reported to the annual church meeting of the plaintiff the moneys in her possession as such secretary and treasurer. Such reports have been made by defendant to each annual church meeting of the plaintiff, some of such reports characterizing the moneys as the organ fund, all of them naming the banks where such moneys were deposited, and showing interest earnings and accumulations. The report of the defendant as such secretary and treasurer made to the annual church meeting in January, 1910, showed $9,448.35 in her custody on January 1, 1910. In January, 1910, the defendant withdrew from the plaintiff church, severed her connection therewith, and has ever since ceased to be the secretary and treasurer of the plaintiff's Sunday school. In February, 1910, the plaintiff duly demanded of the defendant that she pay over to the plaintiff the said sum of $9,448.35, the moneys in her hands, and, upon her refusal so to do, this action was commenced to compel an accounting therefor.

The contention of the defendant is that these moneys were paid to her by the individuals composing the Sunday school as their agent for the purpose of being used to purchase an organ, to be placed in a new church edifice, to be erected on the site known as the Lilacs, which church was to be under the dominating influence and control of Mrs. Annie V. C. Leavitt; that the plaintiff having abandoned the project of erecting a church building on the Lilacs site, and Mrs. Annie V. C. Leavitt having withdrawn and ceased to be a member of plaintiff church, and not to be the controlling influence of any church of the plaintiff, the conditions upon which such moneys were paid to defendant now being impossible of performance, the plaintiff has no legal right or claim thereon, and that defendant does not hold, and did not receive, such moneys as the agent of the plaintiff.

Considerable testimony has been taken upon the question as to what were the conditions upon which the contributions were made that compose the fund in defendant's possession. A careful examination of such evidence does not reveal the fact that such contributions were made upon such exact and precise conditions as defendant now seeks to impose. The testimony is very satisfactory that such contributions were made for the express and special purpose of being used to provide a new organ in a new church to be erected by the plaintiff. Some witnesses say that they understood that the new organ was to be placed in the new church building to be erected on the Lilacs site, but that it was to be any site selected by Mrs. Leavitt. Some witnesses say that the selection of a site by Mrs. Leavitt outside of Buffalo, in Canada, would be a compliance with their wishes. No witness says that at the time the contributions were made was it specifically stated that the contributions were made upon the distinct conditions such as the defendant now contends for. It is quite significant that at none of the annual church meetings of the plaintiff during the past 15 years has the defendant claimed that she held such funds other than as secretary and treasurer of plaintiff's Sunday school; and it is equally significant that it was not until after the defendant had left the plaintiff church and taken such moneys

with her was the claim asserted that she did not hold such funds as the agent of the plaintiff, but as the agent of the numerous donors tied up in her hands by the conditions now urged by her. No contributor to this fund was ever heard to claim that the contributions were made upon the conditions now urged until after such contributor severed his or her connection with the plaintiff church. The defendant and each contributor having treated these funds as the property of the plaintiff for all these years, impressed with the sole condition that it was to be used to provide a new organ for a new church, it must be held that the plaintiff is the legal owner of this fund and entitled to its custody and management, charged with the trust of using the same solely for the purpose of providing a new organ for its new church when erected. The plaintiff is a prosperous, substantial, religious corporation, having a church membership of many hundreds, a large congregation, possessed of real estate of great value, substantially out of debt, is actually engaged in the undertaking of securing a new church edifice, and is in every way competent and qualified to comply with the conditions upon which these contributions were made to it. These Sunday school moneys were paid to the defendant as the secretary and treasurer of plaintiff's Sunday school. They were paid to the plaintiff, and defendant's possession thereof is as the agent and officer of the plaintiff corporation. The plaintiff is answerable to any contributor for a diversion of any of such fund from the purpose for which it was contributed. The annual reports by the defendant as secretary and treasurer of plaintiff's Sunday school, reporting these funds as church funds, having been adopted and approved after audit by plaintiff's auditing committee by the plaintiff, was an acceptance by the plaintiff corporation of the fund, and each contributor thereby knew that any grievance for a diversion of this fund must be made solely to the plaintiff. Every contributor knew that the defendant was the plaintiff's officer; knew that they were paying such moneys to the plaintiff; knew that the defendant would not be answerable to them for any diversion of the fund by the plaintiff from the purpose and object of the contribution; the defendant is the agent of the plaintiff, has no power to divest the plaintiff of its title to these moneys. It is idle to say that the defendant received these moneys as agent of the contributors when there is not a syllable of evidence that the defendant was chargeable with any duty except to see that the plaintiff received the moneys. There is not a suggestion that any contributor ever imposed any condition upon which he handed his money to the defendant. It is impossible from this voluminous record to find as a fact that the defendant was ever the agent of any one except the plaintiff corporation.

In Commercial Travelers' Home Association of America, etc., v. McNamara, 95 App. Div. 1, 88 N. Y. Supp. 443, the defendant received the funds in dispute as the treasurer of a committee that in no wise was connected with the plaintiff, and plaintiff's cause of action depended solely upon the announced intention of the committee that it would give the fund to the plaintiff. That action was brought to recover upon an unexecuted promise to make a gift without the slightest consideration. In the case at bar the action is brought to

recover from its treasurer moneys that have been given to, and which belong to, the plaintiff. The plaintiff is entitled to judgment against the defendant awarding it the custody of the funds in defendant's hands or under her control, together with the accumulated interest thereon, and directing the banks with which the same is deposited to pay the same to the plaintiff. The plaintiff will, of course, take ·the fund for the specific purpose of providing a new organ in its· new church when erected, and have no right to apply it to any other. Should that purpose be abandoned, the donors will have the right, if they so elect, to demand restitution to them by the plaintiff. Rector v. Crawford, 43 N. Y. 476.

Judgment is accordingly ordered, with costs in favor of plaintiff against defendant.