JOSEPH BARKER, JR., EXECUTOR OF THE ESTATE OF ELIZA-
BETH A. BARKER, DECEASED, APPELLANT, V. THE WARDENS
AND VESTRYMEN OF ST. BARNABAS CHURCH, APPELLEE.

126 N. W. 2d 170

Filed January 31, 1964.   No. 35548.

Kennedy, Holland, DeLacy & Svoboda and J. A. C. Kennedy, Jr., for appellant.

Gross, Welch, Vinardi, Kauffman & Schatz and Richard J. Spethman, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, BOSLAUGH, and BROWER, JJ., and ZEILINGER, District Judge.

BROWER, J.

Joseph Barker, Jr., executor of the estate of Elizabeth A. Barker, deceased, plaintiff, brought this action against The Wardens and Vestrymen of St. Barnabas Church, defendant, in the municipal court of the City of Omaha, to recover the sum of $1,000, given by plaintiff's decedent to the "St. Barnabas Church New Building Fund" upon the donee having decided to abandon the project, sell the new site purchased by the funds contributed, return the contributions to those requesting them, and use the remainder for other purposes.

Plaintiff recovered the judgment prayed for in the municipal court. On appeal by the defendant to the district court for Douglas County that court sustained the motion of the defendant to dismiss the case, finding the action was one in equity and that the municipal court and the district court on appeal therefrom had no jurisdiction of the cause.

On a former appeal by the plaintiff to this court the judgment of the district court was reversed and the cause remanded for further proceedings, the former opinion appearing in Barker v. Wardens & Vestrymen of St. Barnabas Church, 171 Neb. 574, 106 N. W. 2d 858, which held that the petition stated a cause of action at law for money had and received.

It was thereafter again submitted to the district court without a jury on admissions contained in the pleadings and an agreed stipulation of facts. The district court again dismissed the petition and in its judgment gave its reason for so doing that the plaintiff as executor of the decedent's estate was not the proper party to bring the action but the proper parties were the residuary legatees of the estate of deceased. It also found the plaintiff had failed to prove his case by a preponderance of the evidence.

Plaintiff's motion for a new trial being overruled he brings the cause to this court by appeal for the second time.

The plaintiff assigns the following errors to the district court: (1) In holding that Joseph Barker, Jr., as executor of the estate of Elizabeth A. Barker, deceased, was not a proper party to bring this action; (2) in contravening the "law of the case" as determined on the prior appeal in Barker v. Wardens & Vestrymen of St. Barnabas Church, *supra;* (3) in holding that the plaintiff failed to prove and establish his case by a preponderance of the evidence; and (4) in dismissing the petition.

The substance of the facts agreed upon by the parties is here set out.

Elizabeth A. Barker died testate, a resident of Omaha, Nebraska, on April 21, 1953, and her will was probated in the county court of Douglas County, Nebraska. The will designated her son Joseph Barker, Jr., plaintiff herein, as executor of her estate. After certain bequests the remainder of her estate was left to her four surviving children, being her son Joseph Barker, Jr., and her three daughters. The executor was appointed as such by the county court of Douglas County. He paid the claims against the estate, distributed the assets then in the estate, and received his discharge December 9, 1955.

On September 22, 1958, following, on application of Joseph Barker, Jr., the county court of Douglas County entered an order which stated in substance that he

having represented that there were subsequent to his *dismissal* assets belonging to the estate for which claim must be asserted, his *dismissal* was vacated and set aside and he was reinstated as executor to assert and, if necessary, litigate any claims for assets belonging to the estate. On October 7, 1958, letters testamentary were again issued to him. Copies of this order reappointing him and of the letters are attached to and made a part of the stipulation. The action was instituted in the municipal court thereafter on December 16, 1958.

The defendant's legal entity was admitted and it was stipulated that a building fund drive was initiated by it in the years 1950 and 1951 for the purpose of acquiring another site and erecting a new church building; and that substantial contributions were received, among them $1,000 from plaintiff's testator. With part of the funds so raised a site was purchased.

It was stipulated a pledge card used in the campaign was signed by the deceased and the $1,000 paid thereunder and though her signed card could not be located the form thereof was set out as follows:

"St. Barnabas Church
Omaha, Nebraska

I hereby pledge to the St. Barnabas Church New Building Fund the total sum of $_____ to be paid in ( ) Monthly ( ) Quarterly ( ) Annual installments before December 31, 19____

Checks, payable to St. Barnabas Building Fund or payments may be deposited in the collection plate or sent to: Mr. Joe Thomas, 4715 Wakeley Street

Dated_____
Name_____
Address_____ "

In the years 1956 and 1957, the Wardens and Vestrymen decided not to build the new church. At an annual parish meeting in January 1957, it was resolved that the new site be sold and that on request the contributors would be reimbursed their contributions and the re-

maining funds be spent (1) for necessary repairs and improvements of the present church building and (2) for establishing and maintaining a parochial mission of St. Barnabas Church. The sale was made at a profit of $24,000.

Certain contributors requested a return of their contributions pursuant to the resolution and they were returned to them. The funds raised in the drive and the profits from the sale of the lot, less only the funds returned to contributors on request, were used to rehabilitate the existing church.

The plaintiff as executor requested the return of the $1,000 contribution made by the deceased to said fund but the request was refused by the defendant and no refund was made to the decedent's estate, or the personal representatives thereof, or her residuary legatees.

The petition of the plaintiff was summarized in our previous opinion in Barker v. Wardens & Vestrymen of St. Barnabas Chuch, *supra*, and need not be further elaborated herein. Neither will it be necessary to set out the contents of the defendant's answer or plaintiff's reply thereto other than to state that the denials and affirmative allegations made by the parties in their pleadings after the cause was remanded by this court sufficiently raised the issues hereinafter discussed.

The trial court gave as its first reason for dismissing the petition that the plaintiff as executor was not the proper party to maintain the action, but that it should have been instituted by the residuary legatees of the deceased. This ruling is challenged by the plaintiff in his assignment of error. In Pinn v. Pinn, 108 Neb. 822, 189 N. W. 371, this court held that if a sum not administered is found belonging to an estate, the proper practice is to have a new administrator appointed in the county court and the fund administered. The defendant herein contends that the rule stated in Pinn v. Pinn, *supra*, permits the appointment of an administrator but not an executor. We consider this argument as tech-

nical in the extreme. The cited case involved an intestate estate and hence spoke only of an administrator. In further support of this argument, defendant cites section 30-311, R. R. S. 1943, providing for the appointment of an administrator with the will annexed where the executor shall die or be removed or his authority extinguished, and contends this statute also requires the appointment of an administrator in the present case because the authority of the executor had been extinguished by his discharge. It would appear this section refers to those instances mentioned in section 30-310, R. R. S. 1943, immediately preceding it, which provides for the removal from office of the executor for the reasons therein stated. The defendant likewise cites 33 C. J. S., Executors and Administrators, § 88, p. 1030, stating that when letters of administration are revoked the former incumbent should not be reappointed. A perusal of this and the several preceding sections in the discussion in C. J. S. shows clearly that the text is considering instances where the executor or administrator was removed by the court either for shortcomings or other cause, rendering his continuance in that office improper under the circumstances. Cases are also cited which disclose the same situation. Patently these authorities have no application to the case before us. The defendant infers the plaintiff might have been dismissed because of the recitations heretofore italicized in the court's order reappointing him. This supposed inference however is in direct conflict with the stipulation of facts. It was stipulated the executor had paid the claims against the estate, rendered his accounts, made distribution of the assets, and had been discharged in 1955. Nothing in the stipulation indicates· he was removed for cause. The defendant's decision not to build the new church was made in 1956 and 1957, thereupon for the first time giving rise to the cause of action asserted for return of the contribution.

By section 30-406, R. R. S. 1943, the executor or ad-

ministrator has a right to the possession of all the personal assets of a decedent's estate. Section 24-504, R. R. S. 1943, gives the county court power to appoint executors and administrators. Section 30-302, R. R. S. 1943, directs the court to issue letters testamentary to the person named as executor therein, if he is legally competent, and provided he shall accept the trust and give bond as required by law.

From what has been said it follows that where letters testamentary have been issued to an executor named in the will and after his accounting and discharge personal property is subsequently found belonging to the estate, the proper practice is for the county court to reappoint the executor unless he is incompetent to act.

The defendant raises objections to the appointment made in this particular instance, suggesting that proper notice was not given to those interested in the decedent's estate. Such objections cannot be raised by the defendant in this action. "The citation or notice of hearing of application for letters of administration cannot be successfully attacked collaterally by one not interested in the estate or in a suit by the administrator against him." Jackson v. Phillips, 57 Neb. 189, 77 N. W. 683. Indeed the several contentions of the defendant embodied in its objections to the plaintiff's appointment as executor and which appear to have entered into the trial court's decision might all be disposed of because the appointment was not subject to collateral attack. "Letters testamentary, issued by a court which has jurisdiction to grant such letters, are valid unless and until revoked, notwithstanding there may be irregularities in the proceeding for which, in a direct attack, they might be revoked." In re Estate of Hoferer, 116 Neb. 254, 216 N. W. 826.

The only other reason given by the trial court in its judgment for its decision in dismissing the cause was "that the plaintiff has failed to prove and establish his case by a preponderance of the evidence." The court

gives no further particulars showing in what respect the plaintiff had failed to prove and establish his case.

The defendant again argues as it did at the previous submission of the case in this court that the present action is an equitable one to establish a resulting trust to which the cy pres doctrine applies. It urges such an action could not have been maintained in the municipal court of the City of Omaha and that the district court had no jurisdiction thereof on appeal. These are the precise questions which were submitted to and determined by this court in our former opinion. We held in Barker v. Wardens & Vestrymen of St. Barnabas Church, *supra*, that: "Whenever one person has money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay it to the latter and the obligation may be enforced by assumpsit." We further held: "An action for money had and received is an action at law."

In the previous opinion this court stated the petition in the municipal court was not before us and the recitations in the transcript from municipal court were accepted by this court as to the nature of the case therein. The original petition from municipal court is now contained in the transcript. It appears therefrom that the petition originally filed in municipal court is in substance the same as that summarized in the previous opinion and upon which the cause was thereafter tried. Our previous opinion therefore has precluded the defendant from again litigating these same questions. "The decision of questions presented to this court in reviewing the proceedings of the district court becomes the law of the case and for purposes of the litigation settles conclusively the matters adjudicated expressly or by necessary implication." Noble v. City of Lincoln, 158 Neb. 457, 63 N. W. 2d 475.

The defendant's argument seems based in part on a contention that the defendant being a charitable corporation plaintiff can in no event recover the amount of

his testator's contribution, but the defendant is entitled to apply it to another purpose as near to that for which the contribution was made as the circumstances admit. By this it again attempts to invoke the doctrine of cy pres. This may well be precluded by our previous decision in Barker v. Wardens & Vestrymen of St. Barnabas Church, *supra*, but inasmuch as that decision went primarily to the question of the sufficiency of the pleading while the present case is an appeal from a decision after the submission of the cause under a stipulation of facts, we will consider certain aspects of these contentions.

The case of In re Estate of Griswold, 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858, involved a claim filed in a decedent's estate by Nebraska Wesleyan University on a note given as a subscription to the endowment, building, and expense fund of the University. It resulted in a decision by this court holding the claim of the University had been properly allowed. The decision does throw some light on the consideration which this court has held as necessary to sustain such contributions. This court there stated: "While in the case of a mere promise to make a gift or donation to a college subject to no condition and imposing no obligation upon the college with respect thereto could not be enforced, we think that when, as in this case, the college is required to perform certain duties with respect to the specific fund, its acceptance thereof and reliance thereon and promise to carry out the wishes of the donor supply the consideration."

In the early case of Avery v. Baker, 27 Neb. 388, 43 N. W. 174, 20 Am. S. R. 672, this court stated: "Where a church edifice has been erected by voluntary contributions and upon the promise and agreement that the building is to be used for certain specified purposes, the contributors to the fund have a right to insist that the property be used for the purposes named, and may enjoin a sale of the building where no adequate cause is shown

and the effect would be to divert the funds from the use intended and apply them elsewhere." In that case the court in its opinion further stated: "A church organization, like any other, must act in good faith with those contributing to the erection of an edifice for its use. A church edifice is the result, ordinarily, of many voluntary subscriptions. It would be the property of those who contributed to its erection, but for the fact that it was made as a donation to a particular society. The donation, however, is for a particular purpose—the erection of a church edifice. The money so contributed cannot be diverted and applied to another use without the donors' consent—as the erection of a building for a college, however much the latter might be needed. If good faith requires the application of the money to the uses for which it was designed, the same rule would seem to apply after the building was erected."

The later case of Cotner College v. Estate of Hester, 155 Neb. 279, 51 N. W. 2d 612, was one where a claim was filed against the estate of a subscriber to the endowment fund of Cotner College. The trial court found that the educational facilities of Cotner College had been suspended and abandoned and disallowed the claim. On affirming the ruling of the trial court this court held: "The general principles governing the performance of contracts apply to subscriptions. If a material change in the plan or purpose for which a subscription is made is effected without the consent of the subscriber, he is excused from performing his promise unless estopped to deny his consent to the change.

"Where there is a total failure of consideration and defendant has derived no benefit from the contract, or none beyond the amount of money which he has already advanced, such failure of consideration may be shown in bar of the action.

"The doctrine of substantial performance has no application where the party obligated to perform deliberately and intentionally departs from the terms of the

contract and attempts to substitute another type of performance."

We are not cited to authorities from this court dealing with the precise question now before us involving the recovery of funds both subscribed and paid by the subscriber where the objects of the gift were not complied with. The general rule is stated in 83 C. J. S., Subscriptions, § 21, p. 752: "A paid subscription may be recovered back on abandonment of the enterprise, or where the agreement expressly provides for recovery, or if the condition on which it was paid has not been fulfilled, or if the subscription was fraudulently procured." We think the rule stated in First Church of Christ Scientist v. Schreck, 70 Misc. 645, 127 N. Y. S. 174, taken in turn from Rector v. Crawford, 43 N. Y. 476, is the correct one applicable to the case before us: "Where a religious society raises a fund by subscription for a particular purpose, it cannot divert the fund to another purpose, and, if it abandons such purpose, the donors may reclaim their contributions."

The defendant in an endeavor to defeat the plaintiff's action or to relegate him to one in equity cites several cases involving trusts. Most of them have no application to the case before us. The case of Hobbs v. Board of Education of Northern Baptist Convention, 126 Neb. 416, 253 N. W. 627, concerns certain funds held by the trustees of Grand Island College. That case discusses at length the several funds so held. Some of those funds were held to constitute a charitable trust, others were not, and certain rules were laid down distinguishing the one from the other. It was there said: "Donations to the endowment fund of a college, conditioned that the principal sum shall be 'invested and preserved inviolable as endowment for said college,' constitute a charitable trust." Such charitable trusts however were there clearly distinguished from the contributions such as that made in the present case, the court there holding: "Donations to a college without other condition than that they shall

be used for the purpose of erecting buildings and maintaining a college for education of the young do not constitute a trust, but are at most gifts upon condition."

In the present case the contribution was for the "New Building Fund" of the St. Barnabas Church. The subscription card so designated it. It was pledged and paid pursuant thereto in the course of a drive to procure such funds for building a new church. The plan was abandoned, the lot was sold at a profit, and the funds were diverted to another purpose. They were returned on request to certain contributors. The defendant's identity was admitted. The facts showing the plaintiff's appointment and the letters testamentary which issued to him were shown. Demand was made by the plaintiff for the return of the contribution and was refused by the defendant. All of these facts were pleaded by the plaintiff in his petition. All of the facts were admitted either by answer or the stipulation of the parties. We know of nothing more which is necessary to be pleaded or proved by plaintiff to sustain his cause of action or entitle him to judgment, and the defendant points out nothing further.

The contentions of the defendant that the plaintiff had no capacity to sue, that he had pursued the wrong remedy, or that he was entitled to no remedy were but conclusions of law maintained by the defendant, all of which have now been decided against it by this court.

The plaintiff filed a motion for a new trial, alleging that the judgment is not sustained by the evidence and is contrary to the evidence and the law. This raises in this court a question only of law applicable to the facts which were admitted.

Where an action at law is submitted to the trial court without a jury for determination on an agreed statement of facts which presents to this court on appeal only questions of law applicable to those facts, this court in determining the law involved may direct the rendi-

tion of the appropriate judgment which should have been entered by the trial court.

The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff for the relief prayed.

REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., participating on briefs.

SPENCER, J., concurring.

I concur in the result herein, but feel that the majority opinion has not sufficiently answered the contention that the executor was not the proper party to maintain the action and also that the statement derived from the case of Pinn v. Pinn, 108 Neb. 822, 189 N. W. 371, in the majority opinion, was dicta therein and is not an accurate statement of the law. The proper practice is *not* to appoint a *new* executor or administrator.

In Hazlett v. Estate of Blakely, 70 Neb. 613, 97 N. W. 808, we held that: "An executor or administrator may resign or may be removed for cause, but a county court has no authority to discharge such officer from his trust, merely upon the settlement of what is called a final account.

"The trust of such officer is a continuing one, and his formal discharge, in a decree upon final accounting, does not destroy the relation, but merely discharges him from liability for the past."

This holding is reaffirmed in Brownell v. Adams, 121 Neb. 304, 236 N. W. 750; Parker v. Luehrmann, 126 Neb. 1, 252 N. W. 402; and Columbus Land, Loan & Bldg. Assn. v. Wolken, 146 Neb. 684, 21 N. W. 2d 418, 165 A. L. R. 1285.

WHITE, C. J., joins in this concurrence.