614 F.2d 181
 COLUMBUS COMMUNITY HOSPITAL, INC., a Nebraska Nonprofit
Corporation, Appellee,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Appellant,
and
Blue Cross of Nebraska, a Nebraska nonprofit Corporation,
and Blue Cross Association, an Illinois nonprofit
Corporation.
 No. 79-1273.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 5, 1979.
Decided Jan. 29, 1980.
 
 Thomas K. Stuber, Dept. of H.E.W., Baltimore, Md., for appellant; Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Edward G. Warin, U.S. Atty., Omaha, Neb., Leila H. Carp, Atty., Dept. of H.E.W., Baltimore, Md., on brief.
 Lyman L. Larsen, Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellee.
 Before GIBSON, Chief Judge,* and STEPHENSON and HENLEY, Circuit Judges.
 FLOYD R. GIBSON, Senior Judge.*
 
 
 1
 The Secretary of Health, Education and Welfare appeals the decision of the United States District Court for the District of Nebraska[1] which found Columbus Community Hospital, Inc. to be entitled under applicable Medicare regulations to use a cost basis for depreciation of the hospital facility which exceeded its direct outlay in purchasing the hospital. We affirm.
 
 
 2
 Columbus participates in the Medicare program as a provider of medical care to the aged. See 42 U.S.C. §§ 1395-1395pp (1976). The Secretary reimburses Columbus for its "reasonable costs" for services provided, through the use of a financial intermediary, in this case Blue Cross of Nebraska. The intermediary, in accordance with applicable regulations, ascertains the amount of payments to be made to the providing hospital. These reimbursements are made in the form of estimated monthly payments, with a final exact determination and adjustment, if necessary, being made at the close of the hospital's fiscal year. The final determination is based upon a cost report filed by the hospital which is analyzed by the intermediary. 42 C.F.R. §§ 405.406(b), 405.1803 (1977).
 
 
 3
 On May 19, 1976, and July 19, 1976, the intermediary notified Columbus that it had disallowed a portion of the costs claimed by the hospital as allocable to the depreciation of the facility for the fiscal years ending April 30, 1974 and 1975. Columbus appealed this decision to the Provider Reimbursement Review Board,[2] which on September 7, 1977, reversed the intermediary's decision and increased the depreciable basis, although to an extent less than that claimed by Columbus. The decision of the Board was, in turn, reversed on November 7, 1977, by the Administrator of the Health Care Financing Administration, on behalf of the Secretary, who reinstated the decision of the intermediary. Columbus then sought review in the District Court pursuant to 42 U.S.C. § 1395Oo (f)(1) (1976). The court reversed, finding that the Secretary erred in determining the cost basis.[3] The Secretary appeals this decision.
 
 I.
 
 4
 The determination of the proper depreciable basis of the hospital has been made difficult by the complex circumstances surrounding the change of ownership of the facility which occurred on March 29, 1972. In 1971, Behlen Community Hospital, Inc., (now Columbus Community Hospital, Inc.), a non-profit organization, was formed by the citizens of the Columbus community to purchase two existing hospitals in the area and consolidate them into one, more efficient operation. After purchasing a Catholic hospital, Columbus undertook negotiations with Lutheran Hospital and Homes Society of America to purchase Behlen Memorial Hospital (Behlen).
 
 
 5
 Behlen was constructed in the late 1960s as a result of a fund drive initiated in the early 1960s by Lutheran and representatives of the local community on Lutheran's advisory board. The cost of construction of Behlen was approximately $1,600,000, which was financed by $1,000,000 supplied by Lutheran and by approximately $600,000 in contributions from the local community. Over half of the latter amount was donated by Walter Behlen and his family, who were leading members of the community.
 
 
 6
 At the time of the negotiations to sell Behlen, Lutheran had to consider the effect of the community's interest in the hospital in reaching a sales agreement with Columbus. In order to avoid violating any fiduciary duty to the community, Lutheran considered contacting all community contributors in order to obtain either their written approval to the proposed sale or to receive a written request for a refund if the sale went through. It appears that this approach was not followed through on by Lutheran. Instead, Lutheran entered into a contract of sale with Columbus on March 29, 1972, whereby Columbus agreed to indemnify Lutheran against any claims brought by community contributors who might disapprove of the sale or of Columbus's subsequent operation of the hospital. The contract provided that the total purchase price was to be $1,600,000, to be paid by one million in cash by Columbus and a credit of $600,000 on the purchase price represented by the donated contributions of "Walter Behlen and the other Residents of the State of Nebraska." In the contract, Columbus also agreed to carry over the depreciated book value of the hospital, that was utilized by Lutheran, to all subsequent "third-party reimbursement formulas" in which Columbus might participate. Columbus therefore expressly recognized the community's equity interest in the hospital and also contemplated the potential effect the purchase may have on the depreciable basis of the hospital for Medicare purposes.
 
 
 7
 On April 28, 1972, Lutheran filed its final cost report with the intermediary. In its report Lutheran claimed a net depreciated book value of $1,379,823, which was accounted for in the same manner as all previous depreciation had been computed in prior reports. In essence, Lutheran claimed neither a capital gain nor a capital loss on the sale. In 1976, the intermediary, in reviewing Lutheran's final report, found the proper basis to be $1,000,000, or the amount of the direct outlay received by Lutheran from Columbus. Since the final report was prior to the effective date of the Provider Reimbursement Review Board, the decision of the intermediary was appealed to the intermediary's hearing examiner who upheld the $1,000,000 basis. Direct appeal was taken by Columbus to the District Court, alleging a lack of due process in review procedures. The District Court ordered a final administrative review by the Secretary, who upheld the $1,000,000 basis. Lutheran was therefore allowed a $379,823 loss on the sale, which it initially did not request or want. Lutheran recognized the $600,000 community contribution in selling the facility to Columbus by giving credit for that amount, and claimed no gain or loss on the sale. Obviously the hospital would not have been built without the community's $600,000 donation. Lutheran recognized this fact and properly agreed that this donative effort would remain with the facility for the benefit of the community. The Secretary's determination of a capital loss to Lutheran was gratuitous, arbitrary, and capricious.
 
 
 8
 The only issue in this appeal is the proper depreciable basis Columbus may use for the fiscal years ending April 30, 1974 and 1975, both of which are after the effective date of the Provider Reimbursement Review Board legislation. The intermediary's determination in 1976 finding a $1,000,000 basis for these years was reversed by the Board,[4] which found the proper basis to be the net depreciated book value of the hospital in the amount of $1,367,771. This basis was calculated by utilizing Lutheran's book value of $1,379,823 as of the date of sale, and then adjusting for depreciation between the date of sale and April 28, 1972 (Lutheran's final report date). Columbus had argued before the Board that the depreciated basis should be calculated by using the figure of $1,600,000, less depreciation on the donated assets, rather than the carry-over basis from Lutheran, despite Columbus's having previously expressly agreed in the sales contract to utilize the latter basis in such situations. As previously noted, Lutheran had used the latter basis in its final report.
 
 
 9
 The Board's decision was reversed by the Administrator of the Health Care Financing Administration, on behalf of the Secretary. The Administrator reinstated the intermediary's determination of a $1,000,000 basis. Columbus appealed to the District Court. Columbus continued to argue for a basis calculated from the $1,600,000 sales figure rather than carry over Lutheran's depreciated basis. On cross-motions for summary judgment, the court reversed the Secretary's decision. The court found the Secretary had not properly considered the significance of the indemnity agreement and concluded that "(t)he depreciable cost basis of this Hospital should have been determined as $1,000,000 plus the net book value of the donated assets which were previously depreciated by Lutheran." The court then remanded the case to the Secretary to determine the appropriate depreciated value, since Columbus was contending for a proper cost basis on the ongoing facility at $1,000,000 (the cash basis) plus the net book value of the $600,000 of donated assets on April 28, 1972, amounting to $472,701, which figured to a total of $1,472,701, or to utilize the depreciated net book value of Lutheran as of the final report date of April 28, 1972, in the amount of $1,367,771. From this decision, the Secretary appeals.
 
 II.
 
 10
 The scope of judicial review of the Secretary's decision regarding a determination of the Provider Reimbursement Review Board is to be governed by "the applicable provisions under chapter 7 of Title 5 (5 U.S.C. §§ 701-707, the Administrative Procedures Act)." 42 U.S.C. § 1395Oo (f)(1) (1976).[5] The reviewing court shall hold unlawful and set aside agency action, findings and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E) (1976). See Fairfax Hospital Association, Inc. v. Califano, 585 F.2d 602, 612 (4th Cir. 1978); American Medical International, Inc. v. Secretary of HEW, 466 F.Supp. 605, 610 (D.D.C.1979).
 
 
 11
 In dealing with an administrative agency's interpretation of its regulations, this court must give considerable deference to the agency's interpretation. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). However, an interpretation which is "plainly erroneous or inconsistent with the regulation" must be reversed. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Appelwick v. Hoffman, 540 F.2d 404, 406 (8th Cir. 1976).
 
 III.
 
 12
 The Secretary possesses statutory authority to issue regulations fixing the amount of costs which a provider may be reimbursed for. 42 U.S.C. § 1395x(v) (1)(A) (1976).[6] Pursuant to that section, the Secretary has issued a regulation which makes an allowance for depreciation of a hospital facility based upon costs. 42 C.F.R. § 405.415 (1977). Subsection (g) of that regulation provides for the establishment of a cost basis on the purchase of a facility as an ongoing operation. Section 405.415(g) states:
 
 
 13
 In establishing the cost basis for a facility purchased as an ongoing operation after July 1, 1966, the price paid by the purchaser shall be the cost basis where the purchaser can demonstrate that the sale was a bona fide sale and the price did not exceed the fair market value of the facility at the time of sale. The cost basis for depreciable assets shall not exceed the fair market value of those assets at the time of sale. * * *
 
 
 14
 Subsection (j) of that same regulation deals with the proper basis of a donated asset, and provides:
 
 
 15
 Where an asset that has been used or depreciated under the program is donated to a provider, the basis of depreciation for the asset shall be the lesser of the fair market value or the net book value of the asset in the hands of the owner last participating in the program. The net book value of the asset is defined as the depreciable basis used under the program by the asset's last participating owner less the depreciation recognized under the program.
 
 
 16
 The Secretary refused to apply subsection (j) to the value of the community's equity interest in its portion of the original $1,600,000 construction cost. Instead, the Secretary relied upon subsection (g) exclusively, and found a purchase price of $1,000,000 was paid by Columbus to acquire the entire facility. The District Court found the Secretary erred in not applying subsection (j) to the community's equity interest in the hospital[7] and having the same reflected in Columbus's "depreciable cost basis." The court held that the regulations must be read together "so as to give effect, if possible, to all provisions," citing Jay v. Boyd, 351 U.S. 345, 360, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), and concluded that "(t)he depreciable cost basis of this Hospital should have been determined as $1,000,000.00, plus the net book value of the donated assets which were previously depreciated by Lutheran."
 
 
 17
 The Secretary argues that section 104.15 of the Provider Reimbursement Manual precludes consideration of any portion of the community's interest in the hospital facility above the $1,000,000 purchase price, and therefore the application of subsection (j) would be inappropriate. Section 104.15 provides in part:
 
 
 18
 An asset is considered donated when the provider acquires the asset without making any payment for it in the form of cash, property, or services. When the provider makes any such payment in acquiring the asset, then this payment, and not the fair market value, is considered to be the historical cost of the asset.
 
 
 19
 According to the Secretary, the rationale for section 104.15 is to prevent a provider from increasing its basis in excess of its own historical cost on the theory that it paid for only part of the asset and received the remainder as a donation. The Secretary contends that the fact that the provision may in practice result "in some inequality" should not be the basis for invalidating the provision. See Fairfax Hospital Association, Inc., supra, 585 F.2d at 606. While the rationale for section 104.15 is sound, its application to the present situation is unwarranted as contravening the import and effect of regulation 405.415(j), and ignores the fact that the depreciated value of the donated assets was merely transferred to Columbus, not donated so as to incur a capital loss. Columbus is not attempting to raise the depreciable cost basis beyond the historical cost of the project. The effect of Judge Denney's decision is to recognize and give effect to the true historical cost less depreciation.
 
 IV.
 
 20
 A provision of the Provider Reimbursement Manual is an agency interpretive rule, not subject to the rulemaking procedures of the Administrative Procedures Act. See 5 U.S.C. § 553(b)(A) (1976); American Medical International, Inc., supra, 466 F.Supp. at 616. The Supreme Court of the United States in 1945 set down the fundamental principles governing judicial interpretation of regulations with regard to administrative interpretive rules. "(A) court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight Unless it is plainly erroneous or inconsistent with the regulation." (Emphasis added.) Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). See generally 2 K. Davis, Administrative Law Treatise § 7.22 (2d ed. 1979). At issue is whether section 104.15 of the Provider Reimbursement Manual is plainly erroneous in light of or inconsistent with 42 C.F.R. § 405.415(j).
 
 
 21
 The transaction involving the change of ownership of Behlen may be characterized as follows. First, Lutheran sold its interest in the hospital to Columbus for $1,000,000. Lutheran's interest represented that portion of the facility that it had funded during the original construction; the balance it held in trust or as a fiduciary for the community. Since Lutheran paid $1,000,000 of the total construction cost of $1,600,000, Lutheran supplied five-eighths or 62.5 percent of the funds necessary to build the facility, and the community the balance. Second, Lutheran transferred the community's equity interest in the facility to Columbus in order not to "loot" the hospital of the community's contributions and thereby violate its fiduciary duty to the community. See, Barker v. The Wardens & Vestrymen of St. Barnabas Church, 176 Neb. 327, 337, 126 N.W.2d 170, 177 (1964), which recognized the general law on contributions to be: "Where a religious society raises a fund by subscription for a particular purpose, it cannot divert the funds to another purpose, and, if it abandons such purpose, the donors may reclaim their contributions." See also Avery v. Baker, 27 Neb. 388, 43 N.W. 174 (1889).
 
 
 22
 Under 20 C.F.R. § 405.415(j) (1977), the basis for this donated asset would be equal to "the lesser of the fair market value or the net book value." Since the fair market value of Behlen was in excess of its net book value at the time of the change of ownership, the proper basis for the donated portions of Behlen should be the net depreciated book value, to be calculated by the Secretary in accordance with the District Court's remand.
 
 
 23
 Section 104.15 of the Provider Reimbursement Manual, however, precludes the inclusion of any amount in excess of the $1,000,000 direct outlay from Columbus for Lutheran's interest. Under the interpretive rule, no allowance is made at all for that portion of Behlen representing the community's equity interest which Lutheran transferred to Columbus. This result is in direct contravention to 42 C.F.R. § 405.415(j) which requires that the basis of the donated asset be the lesser of the fair market value or the net book value. Section 104.15 of the Provider Reimbursement Manual is therefore "inconsistent with the regulation," section 405.415(j). See Bowles v. Seminole Rock & Sand Co., supra, 325 U.S. at 414, 65 S.Ct. 1215. We must disregard section 104.15 in determining the proper basis of Behlen for the 1974 fiscal year.
 
 
 24
 Since the record is not precisely clear as to the exact method of accounting utilized to determine depreciation we are unable to determine the exact depreciable basis for the fiscal year ending April 30, 1974. We agree with the District Court's order that the case should be remanded to the Secretary solely for a determination of the appropriate value of the hospital, giving effect to the $1,000,000 cash payment and the depreciated value of the donative assets.
 
 
 25
 Judgment affirmed.
 
 
 
 *
 The Honorable Floyd R. Gibson was chief judge of the Eighth Circuit at the time this case was submitted, but took senior status on December 31, 1979, before the decision was filed
 
 
 [1]
 The Honorable Robert V. Denney, United States District Judge, District of Nebraska
 
 
 [2]
 Prior to the fiscal year ending April 30, 1974, Columbus did not have a statutory right of appeal from the intermediary's decision. Congress remedied this condition by creating the Provider Reimbursement Review Board to review decisions of the intermediary. 42 U.S.C. § 1395Oo (a) (1976)
 
 
 [3]
 The District Court remanded the case to the Secretary for a determination of the exact cost basis. This determination requires only a ministerial calculation. We therefore have granted review without requiring the remand. See Freeman v. Califano, 574 F.2d 264 (5th Cir. 1979)
 
 
 [4]
 The Board did not have jurisdiction over the intermediary's decision with regard to Lutheran's final basis as of April 28, 1972, since this involved a fiscal year ending prior to the Board's effective date. The Board's decision affects only Columbus's basis for its fiscal years ending April 30, 1974 and 1975
 
 
 [5]
 42 U.S.C. § 1395Oo (f)(1) provides:
 A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of title 5 notwithstanding any other provisions in section 405 of this title.
 
 
 [6]
 42 U.S.C. § 1395x(v)(1)(A) provides:
 The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; * * *. In prescribing the regulations referred to in the preceding sentence, the Secretary shall consider, among other things, the principles generally applied by national organizations or established prepayment organizations (which have developed such principles) in computing the amount of payment, to be made by persons other than the recipients of services, to providers of services on account of services furnished to such recipients by such providers. Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. * * *.
 
 
 [7]
 The District Court also held that the Secretary erred in failing to give consideration to the significance of the indemnity agreement. The court stated that the indemnity agreement was received by Lutheran in exchange for the $600,000 in donations. The court found the indemnity agreement to be equal in value to the property for which it was exchanged, the depreciated net asset value of the donated assets transferred under the contract of sale. We disagree with the District Court's finding regarding the proper valuation of the agreement. The value of an indemnity agreement will depend upon the risk involved, I. e., that a suit may be brought, as well as the potential liability once suit is brought. The District Court's valuation was equal to the full potential liability of Lutheran, without giving any consideration to the risk of suit being brought by a donor or donors. In view of our holding herein, however, we need not make a determination regarding the proper valuation of the indemnity agreement