**MEDICAL CENTER OF INDEPEND-
ENCE, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of
Health, Education and Welfare,\* Blue
Cross of Kansas City, Blue Cross Association, Appellees.**

**No. 79–1702.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1980.
Decided Aug. 28, 1980.

---

\* The Secretary's proper designation is now Secretary of Health and Human Services.

J. D. Epstein, Wood, Lucksinger & Epstein, Houston, Tex., argued, Dennis M. Barry, George R. Laughead, Houston, Tex., and F. Philip Kirwan, Margolin & Kirwan, Kansas City, Mo., on brief, for appellant.

E. Eugene Harrison, Asst. U. S. Atty., Kansas City, Mo., Bruce Granger, Dept. of HEW, Kansas City, Mo., argued, Ronald S. Reed, Jr., U. S. Atty., and Paul P. Cacippo, Regional Atty., Kansas City, Mo., on brief, for appellees.

Before BRIGHT, ROSS and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

Medical Center of Independence, Inc. (MCI), appeals from a judgment of the district court[1] denying MCI reimbursement under the Medicare program for certain management fees, interest expense, and rent. On appeal, MCI argues that the district court erred in its interpretation and application of the "related organization principle" found in 42 C.F.R. § 405.427 (1979). We disagree and therefore affirm.

I. *Background.*

MCI leases and operates a hospital facility in Independence, Missouri, with a financially troubled history. The Lutheran Missionary Homestead Association, Inc. (LMHA), began construction on the hospital in 1966. LMHA was unable to sell enough bonds to complete construction, and soon it was forced into Chapter X bankruptcy pro-

---

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri. The district court opinion is reported in *Medicare & Medicaid Guide* (CCH) ¶ 29,948 (1979).

ceedings. Pursuant to a court-approved 1968 plan of reorganization, MCI was formed as a nonprofit corporation to operate the hospital when completed. Americare Center, Inc., a hospital management firm, acquired all the assets of LMHA in return for satisfying certain creditor's claims and undertaking to complete the hospital facility and lease it to MCI. MCI agreed to operate the facility as a general acute care hospital, to engage Americare as a management company, and to give notes to various creditors.

Americare completed construction of the hospital but began to fail financially and had difficulty equipping the facility. MCI advertised in health care journals in an effort to locate a successor management contractor to Americare. Having received no satisfactory response to its advertisements, MCI entered into negotiations with Hospital Affiliates International, Inc. (HAI). On June 19, 1970, HAI purchased the assets of the hospital from Americare. HAI then entered into a fifteen-year lease with MCI, to become effective August 1, 1970, and a management agreement to run concurrently with the lease. HAI also agreed, as had Americare, to lend up to $200,000 in necessary working capital to MCI.

In August 1970, the bylaws of the hospital were amended to increase the number of directors from eleven to fourteen, to allow nonlocal directors to vote by proxy, and to increase the number of officers' positions. In October 1970, six HAI employees were elected as directors of MCI; two were also elected as MCI officers. Under HAI's direction the hospital began operation and soon became a successful enterprise.

Since the hospital opened MCI has served as a provider of health services under Medicare Part A, 42 U.S.C. §§ 1395c–1395i–2 (1976 & Supp. II 1978). *See* 42 U.S.C. § 1395x(u) (1976). As such, MCI does not bill patients who are eligible under Medicare for covered services. *See* 42 U.S.C. § 1395cc (1976 & Supp. II 1978). Instead, it is to be reimbursed by the Government for its reasonable cost of providing these services or, if lower, the customary charges for them. *See* 42 U.S.C. § 1395f(b) (1976 & Supp. II 1978).

■ A provider may be reimbursed for services rendered to Medicare beneficiaries either directly by the Secretary of Health and Human Services (the Secretary)[2] or through a "fiscal intermediary" that acts as the Secretary's agent for purposes of reviewing claims and administering governmental payments. *See generally Blue Cross Association v. Harris,* 622 F.2d 972 (8th Cir. 1980); *Columbus Community Hospital, Inc. v. Califano,* 614 F.2d 181, 183 (8th Cir. 1980). If a provider is dissatisfied with the fiscal intermediary's determination regarding its claim for costs, it may request a hearing on the matter before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo (a) (1976). The PRRB's determination is the final agency action unless the Secretary, on her own motion and within sixty days after the provider of services is notified of the PRRB's decision, reverses or modifies that decision. 42 U.S.C. § 1395oo (f)(1) (1976).

Although reimbursement under the Medicare program is structured around the concept of reasonable costs, the Medicare statute sets forth only a broad guideline for determining such costs:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs[.]
> [42 U.S.C. § 1395x(v)(1)(A) (1976).]

The statute requires that the Secretary's regulations take into account the direct and indirect costs necessary for the efficient delivery of covered services to Medicare beneficiaries, so that these costs will not be borne by noncovered individuals. 42 U.S.C. § 1395x(v)(1)(A)(i) (1976).

---

**2.** The Secretary was formerly known as Secretary of Health, Education and Welfare.

The Secretary's regulations governing reimbursement of Medicare providers are codified at 42 C.F.R. §§ 405.401–405.488 (1979). As a general rule, payments made by a provider to an outside party for interest expense, facilities, and services are eligible for reimbursement at the provider's cost so long as the payments are reasonable and related to patient care. Under 42 C.F.R. § 405.427 (1979), however, if the provider and its supplier are "related organizations," reimbursement will be limited to the supplier's cost. 42 C.F.R. § 405.427 (1979) provides in relevant part as follows:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such costs must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions* — (1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

When MCI's fiscal intermediary, Blue Cross of Kansas City, audited MCI's cost reports for fiscal years 1970–73, it determined that MCI and HAI were related through common control. In accordance with the terms of 42 C.F.R. § 405.427 (1979), the intermediary disallowed part of the interest expense, management fees, and rental payments claimed by MCI, reducing its Medicare reimbursement for those years by over $300,000. Only the reimbursement for fiscal year 1973 is before us in this case.[3]

MCI appealed the intermediary's 1973 determination to the PRRB. The PRRB rendered a decision in MCI's favor, concluding that MCI had introduced substantial evidence that it and HAI were not related at the time that they entered into their agreement, and that HAI exercised no significant control over MCI thereafter. Subsequently, the Commissioner of Social Security (the Commissioner), acting pursuant to authority delegated by the Secretary, reversed the PRRB's decision. The Commissioner held that the PRRB erred in interpreting 42 C.F.R. § 405.427 (1979) to require the actual exercise of control by one organization over another; according to the Commissioner, HAI's power to control MCI was sufficient to make them related organizations within the meaning of the regulation.

MCI appealed this determination to the district court pursuant to 42 U.C.S. § 1395oo (f)(1) (1976). MCI argued before the district court (1) that the Commissioner was an improper delegate of the Secretary's authority; (2) that the Commissioner's decision was erroneous because it was not supported by substantial evidence; and (3) that the Commissioner's decision was erroneous because the related party principle does not apply to contracts between organizations that are unrelated at the time of contracting. The district court rejected all three contentions. On appeal, MCI renews its challenge to the correctness of the Commissioner's decision under 42 C.F.R. § 405.427 (1979), and in addition challenges the validity of the regulation as applied in this case.

---

**3.** Because the PRRB has jurisdiction to hear appeals only for reporting periods ending June 30, 1973, or after, MCI pursued its appeals for fiscal years 1970, 1971, and 1972 through Blue Cross Association. These appeals proved fruitless, and MCI sought judicial review in the district court. On July 13, 1977, the district court dismissed without prejudice MCI's claims for fiscal years 1970–72 because the court lacked federal jurisdiction and MCI had failed to exhaust its administrative remedies. *Medical Center of Independence v. Califano*, 433 F.Supp. 837 (W.D.Mo.1977). MCI has since filed a petition in the United States Court of Claims seeking review of adverse administrative determinations for those years.

II. *Analysis.*

A. *Standard of Review.*

The scope of judicial review of the Commissioner's decision is governed by "the applicable provisions under chapter 7 of title 5 [5 U.S.C. §§ 701–706, the Administrative Procedure Act]." 42 U.S.C. § 1395oo(f)(1) (1976). Under 5 U.S.C. § 706(2) (1976), a reviewing court is directed to hold unlawful and set aside agency action, findings, and conclusions found to be

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

\* \* \* \*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

\* \* \* \*

(E) unsupported by substantial evidence[.]

■ This court has recognized that an administrative agency's interpretation of its own regulations deserves considerable deference by a reviewing court. *Columbus Community Hospital, Inc. v. Califano, supra*, 614 F.2d at 185 (*citing Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)). MCI argues, however, that such deference is inappropriate in this case because the Secretary is an interested party and the question presented is one of law.

MCI points out that the Commissioner of Social Security, to whom the Secretary has delegated the power to review PRRB decisions, presides over an agency with budgetary responsibility for the trust fund from which appealing providers' claims are paid. *See* 42 U.S.C. § 1395i(b), (h) (1976 & Supp. II 1978).[4] As a result, MCI contends, the Commissioner faces inevitable conflicts of interest in deciding PRRB appeals. Statistics adduced by MCI reveal that between 1975 and 1978 the Secretary (or her delegate) reversed

over forty percent of PRRB decisions favorable to providers; by contrast, not a single decision adverse to a provider was reversed.

This statistical record is troubling. Nonetheless, MCI's arguments are more appropriately addressed to Congress, which has responsibility for establishing administrative review procedures and can take cognizance of long-range patterns of decisionmaking. Our focus is necessarily confined to the case before us. We note, moreover, that our standard of review is unaltered by the fact that an administrative agency has reversed the decision of its hearing board. The question remains in each case whether substantial evidence in the record as a whole supports the final administrative determination. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951); *FCC v. Allentown Broadcasting Co.*, 349 U.S. 358, 363–64, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955); *Fairfax Hospital Ass'n, Inc. v. Califano*, 585 F.2d 602, 610–12 (4th Cir. 1978); *American Medical International, Inc. v. Sec. of HEW*, 466 F.Supp. 605, 611–12 (D.D.C.1979). "Substantial evidence" in this context means something less than the weight of the evidence; it denotes adequacy of the evidence to support the conclusion drawn. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966) (and cases there cited).

MCI argues that deference to the Secretary is also inappropriate in this case because the major question presented is one of law—namely, whether the Commissioner has interpreted 42 C.F.R. § 405.427 in a manner inconsistent with the governing statutes, 42 U.S.C. §§ 1395f and 1395x(v)(1)(A) (1976 & Supp. II 1978). We agree that the Commissioner has no special expertise in addressing legal questions, and that the courts are the final authorities on issues of statutory construction. *E. g.*,

---

**4.** Because responsibility for administering the Medicare program was transferred in 1978 from the Social Security Administration to the Health Care Financing Administration, the various roles formerly played by the Commissioner of Social Security are now performed by the Administrator of the Health Care Financing Administration. *See* S.Rep.No. 95–714, 95th Cong., 2d Sess. 17–18, *reprinted in* [1978] *U.S. Code Cong. & Admin. News*, pp. 848, 865.

*Volkswagenwerk v. FMC*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). The fact remains that an agency's construction of its operational statute is entitled to deference by the courts. *Blue Cross Association v. Harris, supra*, slip op. at 14–15 (and cases there cited). Ordinarily, this construction will be upheld if it has a reasonable basis in law and does not frustrate congressional policy. *Volkswagenwerk v. FMC, supra*, 390 U.S. at 272, 88 S.Ct. at 935. It is this standard that will guide our review of MCI's statutory claims.

### B. *Sufficiency of the Evidence.*

The district court, having thoroughly reviewed the record in this case, concluded that substantial evidence supported the Commissioner's finding that HAI had "the power, directly or indirectly, significantly to influence or direct the actions or policies of [MCI]." 42 C.F.R. § 405.427(b)(3) (1979). The court noted that HAI had six representatives on MCI's fourteen-member board of directors; that two HAI officials were elected to serve as vice president and assistant secretary of MCI in October 1970; and that MCI's administrator became an employee of HAI in 1972. The court also noted that only HAI could cancel the lease agreement between itself and MCI, and if it were cancelled, HAI would assume all of MCI's assets and liabilities.

We agree with the district court that substantial evidence in the record demonstrates HAI's power to control MCI. *Cf. Fallston General Hospital v. Harris*, 481 F.Supp. 1066 (D.Md.1979) (control test satisfied where general partner in a limited partnership hospital was empowered to enter into and perform a lease agreement with a lessor owned by the general partner); *Fairfax Hospital Ass'n, Inc. v. Mathews*, 459 F.Supp. 429, 433–36 (E.D.Va.1977), *aff'd sub nom. Fairfax Hospital Ass'n, Inc. v. Califano*, 585 F.2d 602 (4th Cir. 1978) (pharmacist and hospital related by his power of control where he had helped organize hospital, had obtained pharmacy lease on favorable terms, and had served as an officer and director); *Hillside Communi-*

*ty Hospital of Ukiah v. Mathews*, 423 F.Supp. 1168, 1173–75 (N.D.Cal.1976) (seller of land and hospital building had power of control where three members of the board of directors of the hospital together owned 46.5% of the seller).

■ MCI on this appeal does not directly attack the substantiality of the evidence supporting the Commissioner's determination; rather, it argues that the Commissioner erred in overlooking or discounting several instances in which HAI failed to control MCI's actions. This error, MCI contends, is due to the Commissioner's equation of potential influence with actual influence or control. We note, however, that this equation is implicit in the language of 42 C.F.R. § 405.427 (1979), which focuses on the *power* to control. Power is not necessarily lost, and may in fact be enhanced, by its infrequent exercise. *Cf. Fallston General Hospital v. Harris, supra*, 481 F.Supp. at 1069 (power to direct actions of provider not lost by its delegation to management company).

MCI also argues that the Commissioner erred in glossing over the question of the significance of HAI's control. In part this argument simply restates MCI's contention that potential influence is insufficient to warrant a finding of control. More importantly, MCI claims that the requirement of significant influence precludes the Commissioner from using evidence of influence gained at the time of contracting to establish control over the terms of the contract. Both challenges raise the question of whether the regulation, as interpreted and applied in this case, comports with the language and intent of the Medicare statute. To this question we now turn.

### C. *The Commissioner's Decision and Statutory Requirements.*

The Medicare Act requires reimbursement of all costs incurred by providers in serving beneficiaries, except (1) costs not actually incurred, (2) unnecessary costs, (3) costs attributable to noncovered services, and (4) costs that are unreasonable in amount. 42 U.S.C. §§ 1395f and

1395x(v)(1)(A) (1976 & Supp. II 1978). The related organization principle embodied in 42 C.F.R. § 405.427 (1979) serves to screen out both costs not actually incurred and unreasonable costs. That is to say, the regulation precludes reimbursement for cost increases due solely to transactions between different parts of a single economic unit,[5] and it polices "sweetheart" contracts with suppliers that may inflate costs to the provider.[6]

■ MCI does not take issue with these goals. Nor does it challenge 42 C.F.R. § 405.427 (1979) as drafted.[7] MCI argues rather that the Commissioner failed in this case to apply the regulation in a manner that would further the acknowledged goals of the statute. Because a provider cannot obtain forbidden profits from contracting unless there is common ownership, application of the regulation in a case of common control should focus on the potential for unreasonable costs. Here, MCI contends, HAI's control came into being only when it could no longer affect the costs incurred by MCI.

The district court, in considering this argument, rejected its empirical premises. Because MCI and HAI entered into a long-term relationship, the court observed, the terms of their agreement will be refined, modified and enforced in light of experience and the parties' respective power through the years.[8] While the absence of any prior relationship between the parties is certainly relevant to the issue of control, it is insufficient to establish a *per se* rule barring application of the related party principle.

We agree with this reasoning. In our view, the power of control over MCI enjoyed by HAI since 1970 cannot be rigidly separated from the terms of their agreements. We recognize that a contrary conclusion was reached in *Northwest Community Hospital, Inc. v. Califano*, 442 F.Supp. 949 (S.D.Ia.1977). Like the district court in the present case, however, we find the *per se* rule adopted in that case unjustified by a management contractor's purported need to exercise control and inappropriate in light of our standards of review.

■ We hold, therefore, that the Commissioner's application of 42 C.F.R. § 405.-427 in this case did not violate the Medicare statute. The regulation, as applied, serves as a rough prophylactic rule barring the reimbursement of presumptively unreasonable costs. *See Mourning v. Family Publi-*

---

5. As the court observed in *Fairfax Hospital Ass'n, Inc. v. Mathews, supra*, 459 F.Supp. at 433:

   Where "control," an issue of fact, is established, and only where it is established, the proscription of the regulations merely denies a double profit to a firm which is, in effect, dealing with itself.

   *See also American Medical International, Inc. v. Sec. of HEW, supra*, 466 F.Supp. at 617–18.

6. Courts have also suggested that § 405.427 serves to limit unnecessary costs, or to define reimbursable costs in general. *Fallstone General Hospital v. Harris, supra*, 481 F.Supp. at 1070; *Pasadena Hospital Ass'n, Ltd. v. United States*, 618 F.2d 728, 732–34 (Ct.Cl.1980). In our view, however, this regulation does not implicate questions of necessity, either with respect *to* underlying transactions *or* with respect to particular procedures that are performed on Medicare patients. Nor do we agree that the Secretary's regulations may define "cost" as they see fit, for "cost" is a simple term of relatively fixed meaning. Moreover, if the Secretary possessed carte blanche authority to define costs, the explicit restrictions Con-

gress imposed on reimbursable costs would be mere surplusage.

7. Several courts have upheld the regulation against statutory and constitutional attacks. Upholding 42 C.F.R. § 405.427 as consistent with 42 U.S.C. § 1395x(v)(1)(A)(1976): *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co.*, 311 F.Supp. 405, 410–11 (E.D.Wis.1970); *Fairfax Hospital Ass'n, Inc. v. Mathews, supra*, 459 F.Supp. at 433; *Lockwood Hospital, Inc. v. Califano*, No. 76–H–240 (S.D.Tex. Feb. 10, 1978), aff'd per curiam sub nom. *Lockwood Hospital, Inc. v. Harris*, 616 F.2d 566 (5th Cir. 1980).

   Upholding 42 C.F.R. § 405.427 as consistent with the Constitution: *Fairfax Hospital Ass'n, Inc. v. Mathews, supra*, 585 F.2d at 605–10; and *Chelsea Community Hospital v. Mich. Blue Cross*, 436 F.Supp. 1050, 1061–63 (E.D.Mich. 1977).

8. This fact distinguishes a case heavily relied on by MCI, *South Boston General Hosp. v. Blue Cross of Va.*, 409 F.Supp. 1380 (W.D.Va.1976). *See id.* at 1383–84.

*cations Service, Inc.*, 411 U.S. 356, 372–74, 93 S.Ct. 1652, 1662–63, 36 L.Ed.2d 318 (1973); *Fairfax Hospital Ass'n, Inc. v. Califano, supra*, 585 F.2d at 606–07.[9] We emphasize that, while the regulation relieves the Secretary of the need to determine the unreasonableness of particular costs, she must establish by substantial evidence the applicability of the regulation to the facts of each case. Here, as we have noted, the Secretary has satisfied this burden.

Accordingly, the judgment of the district court is affirmed.

---

**9.** We are unpersuaded by MCI's argument that state corporation law and the Internal Revenue Code, each of which contains a different related organization principle, require a very narrow construction of the rule in the context of this case.