**Ivan L. ONNEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 80–0–64.

United States District Court, D. Nebraska.

Oct. 15, 1981.

Ivan L. Onnen, pro se.

Thomas D. Thalken, U. S. Atty., Omaha, Neb., Christine B. Nicholson, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

### I. FACTS AND BACKGROUND

This action involves a request for judicial review of an administrative decision made by the former United States Civil Service Commission (now the Merit System Protection Board). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, this matter comes before the Court for reconsideration of the parties' cross-motions for summary judgment (Filing Nos. 15 and 17).

The Court has carefully reviewed the 327 page administrative record.[1] The facts reflected therein are these. At the time in question, plaintiff was a "preference eligible employee" of the Internal Revenue Service (IRS).[2] He held the position of Assistant Regional Counsel in the Omaha Branch Office for nearly fifteen years. In that position, plaintiff was responsible for supervising six attorneys as well as clerical support staff.

In January of 1978, plaintiff's immediate supervisor, Mr. Dennis J. Fox (Midwest Regional Counsel), was informed that there were serious management and employee morale problems in plaintiff's office. Mr.

---

1. A certified copy of the administrative record was filed by the defendant in support of its motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Filing No. 3). That motion was denied (Filing No. 8).

2. Plaintiff qualified as a "preference eligible employee" because he was a World War II veteran. See 5 U.S.C. § 2108(3)(A) (1976) and 5 U.S.C. § 7511(1) (1976) (repealed 1978). Preference eligible employee status is significant because it affords the government worker certain procedural safeguards in the event that he is suspended, demoted, or dismissed. See footnote 6, infra.

Fox, who worked out of Chicago, Illinois, had received this information by way of several telephone calls from Mr. Leonard Hammes, an attorney under plaintiff's supervision. During these calls, Mr. Hammes made various unfavorable allegations concerning plaintiff's management and the effect it was having on professional and clerical staff. Mr. Fox subsequently sought to verify Mr. Hammes' allegations in separate conversations with another attorney and two former secretaries in the Omaha office.

As a result of the above-described conversations with plaintiff's subordinates, Mr. Fox contacted Mr. Leon G. Wigrizer (Deputy Chief Counsel (General)) in Washington, D. C. Mr. Fox and Mr. Wigrizer then summoned plaintiff to the agency's national headquarters in Washington for a meeting to discuss the matter. When the three men met on March 10, 1978, plaintiff was apprised of the criticisms that had been made of him. Plaintiff was instructed to talk with his employees and to remedy the morale problems. Although plaintiff evidently followed this directive, the morale problems in the Omaha office persisted. Consequently, on March 20, 1978, Mr. Fox and Mr. Joseph Hairston (Director, Administrative Services Division) visited Omaha and spent the entire business day interviewing all of the employees under plaintiff's supervision.

On March 22, 1978, a meeting of all IRS Regional Counsel was held in the agency's national office. The purpose of the meeting was to discuss the Chief Counsel's soon to be implemented reorganization plan. After the meeting adjourned, Mr. Fox and Mr. Hairston informed Mr. Wigrizer and Mr. Stuart Seigel (then Chief Counsel) that, based on the employee interviews they had conducted in Omaha, a serious morale problem did in fact exist in the plaintiff's office. Mr. Fox suggested that because of the Chief Counsel's reorganization plan the Chicago office would need an experienced field office attorney, and that plaintiff's recognized technical expertise could be better utilized there than in Omaha. Mr. Seigel and Mr. Wigrizer agreed that this would solve the managerial problem and that it would also be a good opportunity for plaintiff.

On March 24, 1978, plaintiff visited Mr. Fox in Chicago on an unrelated matter. During discussions there, plaintiff learned for the first time that he might be transferred to Chicago. At the plaintiff's request, a meeting was scheduled for April 5, 1978, with the Chief Counsel in Washington. Plaintiff, Mr. Fox, Mr. Wigrizer, and Mr. Seigel attended this meeting. The four men discussed in general the situation in the Omaha office and, in particular, Mr. Fox's desire to have plaintiff transferred from Omaha to Chicago. Mr. Fox explained to plaintiff the need in Chicago for someone of his technical expertise. He also explained what plaintiff's anticipated duties would be in his new position. It does not appear that the reassignment would have entailed a reduction in rank, i. e., while the exact parameters of plaintiff's duties in Chicago had not been drawn at this stage, the new position at least arguably would have involved greater responsibility. However, plaintiff's direct supervision of other employees would have been more limited than in Omaha.

On April 10, 1978, Mr. Seigel advised Mr. Fox that he had actually decided to relieve plaintiff of his managerial position in Omaha and to reassign him elsewhere. Subsequently, plaintiff was so informed by Mr. Fox. Plaintiff was told that he could elect reassignment to Chicago or to another regional headquarters of his choice. Plaintiff responded by saying that he had decided to stay in Omaha because of personal and family considerations. Mr. Fox then informed plaintiff that the decision to transfer him probably would not be changed at any point in the future. Mr. Fox also offered plaintiff the opportunity to apply for the position of Deputy Regional Counsel, Tax Court Litigation, in Chicago. Reasserting his desire to remain in Omaha, plaintiff declined the offer.

By memorandum dated May 2, 1978, Mr. Wigrizer formally advised plaintiff of his reassignment from Assistant Regional Counsel in Omaha to the position of Staff

Assistant to the Regional Counsel, Midwest Region, in Chicago, effective June 18, 1978. On June 8, 1978, plaintiff applied for retirement, effective June 17, 1978, by submitting a Request for Personnel Action and an Application for Retirement. Plaintiff stated that his retirement was involuntary, having been brought about by involuntary relocation and reassignment. Plaintiff's request was processed by the IRS as an application for voluntary retirement based on involuntary relocation. A Notification of Personnel Action was prepared indicating that plaintiff's retirement was voluntary and that it would be effective June 17, 1978, per plaintiff's request.

On June 14, 1978, plaintiff took his case to the St. Louis Field Office of the Federal Employee Appeals authority, United States Civil Service Commission (now the Office of Appeals Operations, Merit System Protection Board). There, plaintiff made two basic arguments. First, he contended that the proposed transfer to Chicago amounted to a reduction in rank imposed without observance of applicable procedural requirements. Second, he asserted that he was forced into early retirement. On November 30, 1978, the Appeals Officer determined that plaintiff voluntarily retired from the IRS. Noting that plaintiff voluntarily retired one day before the proposed transfer to Chicago was to be effective, the Appeals Officer held that the question of whether the reassignment to Chicago would have constituted a reduction in rank was not an independently appealable matter. On January 9, 1979, plaintiff asked the Civil Service Commission's Appeals Review Board (now the Office of Appeals Review, Merit System Protection Board) to reopen and reconsider the Appeals Officer's decision. On July 26, 1979, plaintiff's request was denied. Having exhausted all possible administrative remedies, plaintiff filed this civil action on January 30, 1980.

Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331(a) (1976) (amended 1980)[3] and 28 U.S.C. § 1346 (1976) (amended 1978).[4] He essentially reasserts his administrative allegations, i. e., that the proposed transfer to Chicago constituted a reduction in rank, and, therefore, an "adverse action";[5] that the IRS failed to follow the applicable procedural requirements in taking said adverse action;[6] that said action was arbitrary and capricious, and that said action was taken in order to force him into early retirement. In terms of relief, the plaintiff seeks a judicial determination that the proposed transfer was a reduction in rank which should be set aside; that he was involuntarily forced to retire; and that he is entitled to reinstatement to the position of Assistant Regional Counsel in the IRS's Omaha Branch Office, together with all rights, benefits and privileges that would have accrued to him had he continued employment in that position.[7]

3. Under 28 U.S.C. § 1331(a) (1976) (amended 1980), federal district courts have original jurisdiction in civil actions arising under the Constitution, laws, or treaties of the United States.

4. Under 28 U.S.C. § 1346 (1976) (amended 1978), federal district courts have original, concurrent (with the Court of Claims) jurisdiction in civil actions against the United States involving the Constitution, an Act of Congress, or an executive department regulation.

5. For purposes of this case, "adverse action" refers to "a removal, suspension for more than 30 days, furlough without pay, or reduction in rank." 5 U.S.C. § 7511(2) (1976) (repealed 1978).

6. The pertinent procedural requirements provide:

A preference eligible employee against whom adverse action is proposed is entitled to—

(1) at least 30 days' advance written notice, except when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, stating any and all reasons, specifically and in detail, for the proposed action;

(2) a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of the answer; and

(3) a notice of an adverse decision.

5 U.S.C. § 7512(b) (1976) (repealed 1978).

7. On the basis of *Giordano v. Roudebush*, 617 F.2d 511, 514–15 (8th Cir. 1980), plaintiff's monetary damage claims (e. g., for back pay) were transferred to the United States Court of Claims on November 28, 1980 (Filing No. 8).

## II. APPLICABLE STANDARD OF REVIEW

Plaintiff has long since abandoned his original contention that the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1976), provides the Court with an independent basis of subject matter jurisdiction (*See* Filing No. 5, p. 1). As explained earlier, plaintiff instead relies on 28 U.S.C. § 1331(a) (1976) (amended 1980) and 28 U.S.C. § 1346 (1976) (amended 1978) in order to establish jurisdiction. While plaintiff no longer relies on the APA as a jurisdictional predicate, he still asserts that its judicial review provisions are applicable to this case.

In regard to the proper scope of judicial review, the APA provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> . . . . .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> . . . . .
>>
>> (D) without observance of procedure required by law;
>> (E) unsupported by substantial evidence . . . on the record . . . ;
>
> . . . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (1976). The Eighth Circuit very recently discussed these standards, stating:

Under the APA, "a reviewing court is directed to hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or ... unsupported by substantial evidence." *Medical Center of Independence v. Harris,* 628 F.2d 1113, 1117 (8th Cir. 1980). "This court has recognized that an administrative agency's interpretation of its own regulations deserves considerable deference by a reviewing court." *Id. See also Columbus Community Hospital, Inc. v. Califano,* 614 F.2d 181 (8th Cir. 1980). *Therefore, the question in each case is whether substantial evidence in the record as a whole supports the final administrative determination. Medical Center of Independence v. Harris, supra, citing Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456 [468, 95 L.Ed. 456] (1951); *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018 [1026, 16 L.Ed.2d 131] (1966). This standard is a narrow one. "The court is not empowered to substitute its judgment for that of the agency." *Marshall v. Knutson Const. Co.,* 566 F.2d 596, 601 (8th Cir. 1977), *quoting Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974).

*Cohen v. Civil Aeronautics Board,* 657 F.2d 999 at 1002 (8th Cir. 1981) (emphasis added).

The defendant's position regarding the scope of judicial review is quite similar to that advocated by the plaintiff. However, the defendant apparently does not believe that the APA is applicable. The defendant instead cites *Turner v. Campbell,* 581 F.2d 547, 548 (5th Cir. 1978); *Pascal v. United States,* 543 F.2d 1284, 1287, 1290 (Ct.Cl. 1976); *Dabney v. Freeman,* 358 F.2d 533, 535, 537 (D.C.Cir.1965); and 5 U.S.C. § 7703(c) (Supp. III 1979)[8] as authority for

---

Only plaintiff's non-monetary claims (*i. e.,* those relating to reinstatement) remain to be decided by this Court.

**8.** The provision cited by the defendant states:

In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

the pertinent review standards. In the defendant's view, this Court must determine whether the decision of the former Civil Service Commission was "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence in the administrative record."

■ The foregoing discussion plainly illustrates that the parties for the most part agree on the applicable standards of review, even though they rely on different authority. For whatever difference it makes, the Court believes that the plaintiff is correct in his assertion that the APA contains the appropriate review standards for a case of this kind. *See Gnotta v. United States*, 415 F.2d 1271, 1275 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970).

The parties agree on the principle that federal courts should not conduct de novo hearings in personnel cases, *i. e.*, the scope of judicial review is limited to the record developed at the administrative level. *See, e. g., Doe v. Hampton*, 566 F.2d 265, 272 (D.C.Cir.1977). The parties also agree that when a plaintiff who has no right to a trial de novo files suit to review an administrative record which is before the reviewing court, the case is ripe for summary disposition. *First National Bank v. Smith*, 508 F.2d 1371, 1374 (8th Cir. 1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86

(1975). *See generally* 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.17[3], pp. 56–692 to 56–695 (1980). Accordingly, with these standards in mind, the Court will proceed to rule on the parties' Rule 56 cross-motions.

### III. DISCUSSION AND ANALYSIS

Within the confines of the limited scope of review set out above, this case essentially involves three issues. First, there is the overriding question of whether plaintiff's retirement from the IRS was voluntarily tendered. Second, given the fact that the requested effective date of plaintiff's retirement preceded by one day the effective of his transfer order to Chicago, there is the question of whether reduction in rank is an independently appealable matter. Third, in the event that the second question is answered in the affirmative, the Court needs to determine whether plaintiff's reassignment from Assistant Regional Counsel in Omaha to Staff Assistant to Regional Counsel in Chicago actually constituted a reduction in rank, thus entitling plaintiff to certain procedural protections.

### A. *Voluntariness of Plaintiff's Retirement*

Plaintiff's motion for summary judgment is premised on the view that the totality of events surrounding his retirement evidences a denial of any viable choice but to retire and that thus, as a matter of law, he is entitled to judgment. Defendant's cross-

---

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(2) obtained without procedures required by law, rule, or regulation having been followed; or
(3) unsupported by substantial evidence;
. . . .
5 U.S.C. § 7703(c) (Supp. III 1979). The above standards were codified as a part of the Civil Service Reform Act of 1978, Pub.L. 95–454, Title II, § 205, Oct. 13, 1978, 92 Stat. 1143. Under 5 U.S.C. § 7703(b)(1) (Supp. III 1979), also enacted in 1978, petitions for judicial review of decisions made by the Merit System Protection Board (formerly a part of the Civil Service Commission) may be filed either with

the Court of Claims or the appropriate circuit court of appeals. Prior to the 1978 Act, employees who wished to challenge Civil Service Commission decisions generally filed their claims in the federal district courts. This led to a bothersome lack of uniformity in judicial review rulings. By limiting the number of courts handling these kinds of cases, Congress sought to remedy this lack of uniformity. *See* S.Rep. No. 95–969, 95th Cong., 2nd Sess. 63 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2785. The 1978 Act, however, is not controlling in this case because plaintiff's claim was filed with the old Civil Service Commission, not the new Merit System Protection Board.

motion is grounded on plaintiff's failure to establish by objective standards that his retirement was obtained by duress.

 The federal courts now seem to abide by a well-defined principle to determine whether a given retirement or resignation was voluntarily tendered. Under this principle, the element of voluntariness is vitiated only when the retirement or resignation is submitted under duress brought on by government action. The three-part test for such duress is (1) that one side involuntarily accepted the other's terms, (2) that circumstances permitted no other alternative, *and* (3) that said circumstances were the result of coercive acts of the opposite side. *Christie v. United States*, 518 F.2d 584, 587 (Ct.Cl.1975); *Stanley v. Commissioners, United States Civil Service Commission*, 505 F.Supp. 63, 66 (W.D.Mo. 1980). When an employee retires or resigns from government service, there is a presumption of voluntariness. *Christie v. United States, supra*, 518 F.2d at 587. Unless the aggrieved employee comes forward to the appropriate administrative body with sufficient evidence to establish that his termination was involuntarily brought about, the initial presumption will prevail. *Id.*

The most critical part of the *Christie* analysis involves the determination of whether the circumstances permitted viable alternatives to retirement. The existence of other alternatives must be measured by a purely objective standard, *i. e.*, duress is *not* measured by the employee's subjective evaluation of a given situation. *Christie v. United States, supra*, 518 F.2d at 587. Merely because the employee is faced with an inherently unpleasant situation in that his choice is limited to unpleasant alternatives does not obviate the voluntariness of his retirement. *Id.* at 587–88.

The Civil Service Commission Appeals Officer carefully examined this particular question. He stated:

Optional retirement is presumed to be a voluntary action on the part of the employee and, as such, requires an agency to effect the action requested. A voluntary action, however, becomes an adverse action if the employee's request is obtained by duress, time pressure, intimidation, or deception. In the instant case, appellant felt constrained by family considerations to remain in Omaha. Therefore, he felt he had no choice but to resign rather than accept reassignment to Chicago. However, the question of voluntariness is not governed by the employee's internal or subjective perception of his situation. Rather, the test layed [sic] down is one of external coercion or duress (see *Christie v. U. S.*, 518 F.2d 584). The fact that the employee may be faced with an inherently unpleasant situation, or that his choice may be limited to two unpleasant alternatives, does not make a resultant personnel action initiated by the employee involuntary.

In evaluating a claim of involuntary resignation or retirement, the Commission takes the position that an action is voluntary only if the employee is free to choose between alternatives, understands the nature of the transaction, has a reasonable time in which to make his choice, and is permitted to set the effective date. It is clear that these criteria have been met in the instant case. As a GS–15 attorney, he clearly understood the nature of the transaction; he had a period of approximately 12 weeks between notice of the transfer from Mr. Fox and the effective date of the transfer; and he selected June 17, 1978, as the effective date of his retirement without influence from the agency (beyond the fact that the transfer was to be effective on the following day). No agency action restricted appellant's freedom to choose between the unpleasant alternatives of retiring or relocating. Even so, the action may still be considered involuntary if the agency ordered the transfer in the expectation that the employee would choose resignation or retirement and, in fact, selected the transfer for the purpose of securing that resignation or retirement rather than for legitimate management considerations (see *Motto v. GSA* 335 F.Supp. 694 (E.D. La.1971)). However, the record will not

support a finding that this was the situation in appellant's case. [H]igher levels of agency management had determined that the manner of appellant's performance of his supervisory duties had contributed to serious morale problems in the Omaha branch office. While appellant blamed Mr. Hammes for the problem and felt he could remedy the situation, he did not deny that the morale problems existed. Both Mr. Fox and Mr. Wigrizer stated that they felt that appellant was an outstanding tax technician and there is no evidence that the agency felt any dissatisfaction with appellant's performance beyond his handling of the particular morale situation in the Omaha Area Office. Similarly, there is no evidence of any personal factors which were a source of friction between appellant and his supervisors. Therefore, it is found that appellant's performance of his supervisory duties in Omaha was the sole basis for the agency's decision on reassignment.

Reassignment of the employee in question is a frequently employed method of solving such situations. Barring unusual circumstances, such as those found in *Motto .v. GSA*, such reassignments are entirely within an agency's discretion. Mr. Wigrizer specifically stated that adverse action or other disciplinary measures against appellant had not been considered. My review of the record reveals no evidence that would support a finding that the agency wished to secure appellant's removal from the Federal Service and order the transfer merely as a pretext to secure his retirement and avoid the necessity of processing an adverse action. Rather, evidence supports a finding that the action was nothing more than what it appeared to be; that is, an effort to alleviate the morale problem in the Omaha office by effecting a change in supervision. Since there were no other appropriate positions for appellant in Omaha, a geographic relocation was unavoidable.

Based on the foregoing analysis, I conclude that appellant has failed to show that his June 17, 1978, retirement was involuntary . . . .

Administrative Record 11–12.

In regard to the question of voluntariness, plaintiff contends that, commencing on March 10, 1978, his immediate supervisor, Midwest Regional Counsel Dennis J. Fox, and Deputy Chief Counsel Leon G. Wigrizer, engaged in a series of "false accusations, unfounded allegations, threats and directives which were designed and calculated to achieve only one result," to wit, plaintiff's forced retirement. Specifically, plaintiff claims that he was unjustly accused of (1) falsifying a time and attendance report, (2) improperly restricting his subordinates' use of telephones, and (3) limiting the office hours worked by his former secretary. Plaintiff also complains that his supervisors effectively denied him any meaningful opportunity to contest or explain the management related morale problem in the Omaha Branch Office. Finally, plaintiff submits that he did not actually have the option of going to Chicago because the IRS delayed authorization of an expense paid househunting trip until just a few days before the effective date of his transfer.

█ The defendant, of course, views things differently. It argues that the Civil Service Commission properly applied the *Christie* test to this case. The Court agrees. Notwithstanding plaintiff's contentions about what actually happened, upon review of the facts as they appear in the administrative record, this Court concludes that plaintiff has failed to show that his retirement was extracted by external coercion or duress. Instead, as the Appeals Officer stated, the decision to transfer plaintiff "was nothing more than . . . an effort to alleviate the morale problem in the Omaha office by effecting a change in supervision." There is simply not enough evidence in the record to convince this Court that plaintiff's supervisors proposed the transfer to Chicago with the expectation that plaintiff would instead retire from the IRS. Therefore, plaintiff's retirement was voluntarily tendered as a matter of law. *Stanley v. Com-*

missioners, *United States Civil Service Commission, supra,* 505 F.Supp. at 66.

## B. *Reduction of Rank as an Independently Appealable Matter*

■ In addition to claiming that he was forced to retire, plaintiff asserts, as a separate basis of appeal, that transfer to Chicago entailed a reduction in rank, and that the IRS imposed said reduction in rank without observing applicable procedural requirements (*e. g.,* formal notice and an opportunity to respond.[9] As stated before, the Court has carefully reviewed the administrative record, which creates some measure of uncertainty as to whether the reassignment of plaintiff to Chicago constituted a reduction in rank. Judging solely from IRS personnel organizational charts and position description sheets, it does appear that the Chicago position was somewhat less prestigious than the one in Omaha held by plaintiff. On the other hand, there is credible evidence in the administrative record that, notwithstanding the overly formalistic organizational charts and job description sheets, plaintiff's superiors contemplated enhancing his overall responsibility in Chicago.[10]

The relevant inquiry at this point, however, does not involve whether the Chicago transfer constituted a reduction in rank. Instead, the appropriate question is whether plaintiff should even be allowed to argue this issue as an independently appealable matter. Defendant has maintained throughout the administrative and judicial proceedings relative to this case that the reduction in rank issue is not independently appealable. To support its position, defendant underscores the fact that plaintiff requested an effective retirement date of June 17, 1978, one day before the June 18,

1978, effective date of his transfer and reassignment to Chicago.

In regard to this issue, the Appeals Officer stated:

In conjunction with his appeal of the allegedly involuntary retirement, appellant also seeks to challenge the reassignment as a reduction in rank. Appellant correctly points out that Civil Service regulations provide that an employee may appeal to the FEAA at any time after receipt of notice of an adverse action. However, this provision concerns the timeliness of that appeal and does not mean that such notice constitutes the occurrence of an appealable action. *It is well settled that, for Commission purposes (including the determination of whether an adverse action has taken place), a personnel action has occurred on the specified effective date (shown in block 13 on the Standard Form 50) and not on an earlier date, such as the date when the employee was formally advised of the anticipated action. Since appellant retired the day before the reassignment was to have been effected, the question of whether the reassignment to the position in Chicago would have constituted a reduction in rank is not an independently appealable matter.*

The question of reduction in rank will be considered only to the extent that the perceived reduction in rank might have been a factor which rendered appellant's retirement involuntary.

If the personnel action had been effected, the question of whether a reduction in rank had occurred would have been reviewable by the FEAA. Since Part 752B procedures had not been followed in effecting the reassignment, a finding that a

---

**9.** The pertinent procedural guarantees are set out in footnote 6, *supra.*

**10.** Of course, the Court realizes that the affidavit testimony of plaintiff's supervisors might be assailed as a convenient after-the-fact effort to rationalize their personnel decisions. With only the administrative record before the Court, however, it is impossible to determine conclusively whether plaintiff's position would have been enhanced or downgraded in Chicago.

It does seem clear that plaintiff's job in Chicago would have entailed less direct supervisory authority over other employees. Plaintiff erroneously assumes that this is necessarily reflective of a reduction in rank. That is, "[s]upervisory duties are not intrinsically of higher rank than technical, professional, or planning duties." Federal Personnel Manual Supplement 752–1, Subchapter S1–4(c)(3).

reduction in rank had occurred would have resulted in cancellation of the action. (Of course, such a cancellation would not necessarily have caused appellant to be transferred back to Omaha). The appeal record clearly shows that appellant was aware of his appeal rights and was familiar with the concepts of reduction in rank. An appeal on the _question of reduction in rank can be pursued while the employee continues to earn full salary and benefits. Thus, an alleged reduction in rank may be directly challenged with minimum difficulty to the employee. In view of this fact, a possible reduction in rank does not constitute a coercive act of sufficient magnitude to make a resultant resignation involuntary within the meaning of the applicable Federal Personnel Manual (FPM) Supplement 752–1, Subchapter S1, provisions.

Administrative Record 10–11 (emphasis added).

At the time of plaintiff's retirement, the Civil Service Commission's jurisdiction was limited to cases involving an adverse action. 5 U.S.C. § 7701 (1976) (amended 1978 and 1979). "Adverse action" was defined as "a removal, suspension for more than 30 days, furlough without pay, or reduction in rank or pay." 5 U.S.C. § 7511(2) (1976) (repealed 1978). A common sense reading of this language leads the Court to conclude that a personnel action sought to be characterized as "adverse" (e. g., a reassignment which the employee feels is a reduction in rank) occurs on the specified effective date of a proposed action, as opposed to some time earlier when the employee is merely notified of the proposed action. If the statute is construed in this way, it becomes clear that plaintiff retired prior to any possible reduction in rank in Chicago and that, ac-

cordingly, the reduction in rank issue would not constitute an independently appealable matter, either before the Civil Service Commission or before this Court.

Plaintiff, however, construes the statutory language differently. Essentially he contends that an adverse action occurred not on June 18, 1978 (the effective date of his transfer to Chicago), but rather on May 2, 1978 (the date he was given written notice of the proposed transfer). The obvious flaw in plaintiff's contention is that the statute simply does not state or even arguably imply that any of the specified personnel actions takes place upon mere notice of the proposed personnel action.

The parties have not cited any dispositive case law which answers the question of precisely when an adverse action takes place.[11] Nor has the Court been able to find any relevant cases. Despite the lack of any dispositive precedent, the Court believes that the defendant's construction of the statute is correct, at least in view of the pertinent personnel regulations. That is, under the terms of the statute there is no adverse action until there is a reduction in rank or other specified personnel action. 5 U.S.C. § 7511(2) (1976) (repealed 1978). According to Federal Personnel Manual Supplement 752–1, Subchapter S1–4(a), "a reduction in rank can occur *only* when the employee is moved from one position to another by an official personnel action. (An official personnel action is an action which requires the issuance of a Standard Form 50 ...)." In plaintiff's case, the Standard Form 50 was dated May 2, 1978. But that form clearly stipulated that plaintiff would not be transferred and thus "moved" until June 18, 1978. Since plaintiff voluntarily elected to make his retirement effective on June 17, 1978, he avoided

11. Plaintiff cites *Pauley v. United States*, 419 F.2d 1061, 1064 (7th Cir. 1969), for the proposition that an adverse action need not be effected for it to be an appealable matter. In *Pauley*, though, the Seventh Circuit merely referred to the fact that, earlier on in the case, the Civil Service Commission's Board of Appeals and Review had held that a reduction in rank issue should have been examined by the administra-

tive appeals officer, even though the employee had refused to accept a transfer which he felt constituted a demotion. The *Pauley* court clearly did not hold as a matter of law that an adverse action occurs upon the mere notice of a proposed reassignment which the employee deems a demotion. Therefore, *Pauley* is not dispositive.

being "moved" from the Omaha position to the Chicago position, and, since he was not "moved," his rank could not have been reduced.

In sum, the Court agrees with the Civil Service Commission Appeals Officer, who dealt with question of rank only to the extent that the perceived reduction might have been a factor bearing on the voluntariness of plaintiff's decision to retire. The Court also agrees with the Appeals Officer's conclusion that the proper remedy for plaintiff in this situation would have been to go through with the transfer to Chicago and then pursue his rank reduction grievance while continuing to earn full salary and benefits in that position.

### IV. CONCLUSION

The evidence in the administrative record amply supports the Civil Service Commission's finding that plaintiff voluntarily retired from the IRS. Because the requested effective date of plaintiff's retirement preceded the effective date of his proposed transfer to Chicago, the reduction in rank issue does not present an independently appealable matter, i. e., this Court need not determine whether plaintiff's rank would have in fact been reduced in Chicago had he reported for duty there on June 18, 1978.

Substantial evidence in the record as a whole supports the final administrative determination. The Court therefore concludes that defendant's motion for summary judgment should be granted, and, accordingly, the plaintiff's cross-motion should be denied.

An Order shall issue contemporaneously herewith.